SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
----------------------------------------------------------------------X

TED DOUKAS, SYNGEN DATA SERVICES
CORPORATION, TED DOUKAS as a shareholder of
SYNGEN DATA SERVICES, TED DOUKAS, as a joint
venture partner with CLAUDIO BALLARD, TED
DOUKAS as an equitable owner of all patents and
technology owned by CLAUDIO BALLARD or his
purported assignees, TED DOUKAS as an equitable owner
of all patents and technology owned by DataTreasury
Corp., TED DOUKAS as owner of certain technology and
Assets produced by a joint venture with CLAUDIO
BALLARD, TED DOUKAS as a 50% equitable owner of
DataTreasury Corp., an assignee of CLAUDIO BALLARD's
ownership of certain technology developed by the joint
venture and unknown Defendants named John and Jane Does
"1" through "750", TED DOUKAS as the constructive and
beneficial owner of all settlements and licensing agreements
relating to certain technology created by virtue of a joint
venture, TED DOUKAS as a joint venture owner of the
assets of a joint venture partnership commonly referred to
as "the *Doukas/Ballard joint venture*",

Plaintiffs,

-against-                    **VERIFIED COMPLAINT**

CLAUDIO BALLARD, KEITH DELUCIA a/k/a
"KEITH WICKEY", a/k/a "KEITH DOYLE", SHEPHARD
LANE, UNIDENTIFIED DEFENDANTS
JOHN AND JANE DOES "1" THROUGH "750",
UNIDENTIFIED CORPORATE ENTITIES "1" THROUGH
"75", UNKNOWN LICENSES AND BANKING
INSTITUTIONS "1" THROUGH "75", DATATREASURY
CORP., KEITH DELUCIA a/k/a "KEITH WICKEY", a/k/a
"KEITH DOYLE" as an owner of shares in DataTreasury
Corporation, SHEPHARD LANE, as an owner of shares in
DataTreasury Corporation, CLAUDIO BALLARD, as an
owner of shares in DataTreasury Corporation, SYNGEN
CORPORATION, CLAUDIO BALLARD as an owner of
shares in SYNGEN CORPORATION, CLAUDIO
BALLARD as the fiduciary to TED DOUKAS and SYNGEN
DATA SERVICES CORPORATION, CLAUDIO
BALLARD as the Constructive trustee of TED DOUKAS'
interest in the technology created by a joint venture, PETER
LUPOLI, VIRGINIA LUPOLI, CSP HOLDINGS INC.,
HAROLD NIX (individually), NIX, PATTERSON AND
ROACH, LLP, BANK OF AMERICA, WELLS FARGO,
CITIBANK, BANK HAPOALIM, BANCORPSOUTH, INC.,
INTUIT, INC., KEYCORP and KEYBANK NATIONAL

1

FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   JUL 07 2011   ★

LONG ISLAND OFFICE

ASSOC., JP MORGAN CHASE & CO., INGENICO, JP
MORGAN CHASE BANK, M&T BANK CORP., MERRILL
LYNCH, UNION BANK OF CALIFORNIA, PNC FINANCIAL
SERVICES GROUP, CHARLES SCHWAB & CO., INC and
CHARLES SCHWAB BANK, MERRILL LYNCH, PIERCE,
FENNER & SMITH, INC., PNC FINANCIAL SERVICES
GROUP, THE ROYAL BANK OF SCOTLAND GROUP,
SUNTRUST BANK, INC., WELLS FARGO & COMPANY,
BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE BANK
OF NEW YORK MELLON CORPORATION, THE BANK
OF NEW YORK MELLON, CITIGROUP, INC., CITIBANK,
N.A., CITY NATIONAL BANK, COMMUNITY BANKING
SYSTEMS, BRANCH BANKING AND TRUST
CORPORATION, COMERICA BANK, COMERICA
INCORPORATED, COMPASS BANCSHARES, INC.,
COMPASS BANK, DEUSTSCHE BANK, EDWARD D.
JONES & CO., L.P., HSBC NORTH AMERICA HOLDINGS
INC., HSBC BANK USA, N.A., FIRST TENNESSEE BANK
NATIONAL ASSOCIATION, CULLEN/FROST BANKERS,
INC., and THE FROST NATIONAL BANK,

Defendants.

-----------------------------------------------------------------------X

  The Plaintiffs, through their attorney, the Law Office of Robert J. Del Col,

hereby complain, show and allege of the Defendants as follows:

**Overview of the Litigation**

  1.  This is an action for fraud, breach of fiduciary duty, constructive

trust, breach of contract and breach of a joint venture agreement, together with

actions emanating from the partnership law, the BCL and that body of law known

as "*equity*". The subject and goal of the joint venture at the center of this dispute

(the *Doukas/Ballard joint venture*) was to develop technology that was

surreptitiously developed and patented by one of the joint venture partners in clear

violation of the express terms of a mutual agreement between two individuals:

Plaintiff TED DOUKAS ("DOUKAS") and Defendant CLAUDIO BALLARD

("BALLARD"). Likewise, this action contemplates a fraudulent transfer of

ownership of the *Doukas/Ballard* technology that was the object of the joint

venture and reflected in the patent spirited away from the *Doukas/Ballard joint*

2

*venture* by BALLARD and wrongfully assigned to Defendant,

DATATREASURY CORP. ("DTC"). It is alleged in this complaint that

BALLARD, in violation of the express terms of a mutual agreement, joint venture

agreement and the fiduciary obligations BALLARD owed to DOUKAS, that

BALLARD stole, co-opted and otherwise converted and assigned away the

*Doukas/Ballard joint venture*'s technology for his own use at the expense of the

*Doukas/Ballard joint venture* and DOUKAS, BALLARD's partner and a

principal of the "*Doukas/Ballard joint venture*". (Exhibit "A") It is further

alleged that by virtue of BALLARD's absolute control of the development of the

technology, DOUKAS' ignorance insofar as technology was concerned and

BALLARD's utter control over the daily operation of the *Doukas/Ballard joint*

*venture* that BALLARD owed a fiduciary duty to DOUKAS. Likewise, because

BALLARD imbued DOUKAS with the belief that secrecy was necessary in order

for the *Doukas/Ballard joint venture* to be a success, BALLARD established a

confidential relationship with DOUKAS which adds another level to the fiduciary

duties BALLARD owed to DOUKAS. Moreover, Plaintiffs also allege that

Defendants, in one capacity or the other, owe to Plaintiffs an accounting and a

corporate dissolution under the common law, the partnership law and the BCL. In

this Complaint, Plaintiffs assert various equitable claims including claims for

injunctive relief and restraints. This complaint also asserts causes of action

arising under CPLR Article 62 (Attachment), CPLR Article 63 (injunctive relief)

and CPLR Article 64 (appointment of a Receiver).

      2.     In this action, Plaintiffs also pursue a host of causes of action

emanating from the law of contracts *vis a vis* the existence of a purported

agreement dated February 9, 2010. (Exhibit "B") It is alleged in this complaint

that on February 9, 2010, the Defendants, each in concert with each other and in

breach of their duty to deal in good faith with Plaintiffs, fraudulently induced DOUKAS into signing an affidavit and agreement that is unconscionable, was obtained by trick and deceit, is the product of fraud and mistake and by virtue of these facts and the others alleged more specifically later on, the agreement and affidavit dated February 9, 2010 are void *ab nitio*, should be declared a nullity, rescinded and otherwise set aside in their entirety. Factually, the agreement dated February 9, 2010 purportedly released Defendants from any obligation to DOUKAS *vis a vis* the *Doukas/Ballard joint venture*, the technology it developed and SYNGEN CORPORATION. For the reasons set forth hereinafter, this complaint addresses the February 9, 2010 agreement head on and seeks several remedies that serve to vitiate the agreement.

      3.     In this complaint, Plaintiffs also seek declaratory judgment against several Defendants. For example, Plaintiffs seek a declarative judgment establishing a joint venture relationship referred to throughout this complaint as the *Doukas/Ballard joint venture*. Plaintiffs also seek declaratory judgment establishing BALLARD as a fiduciary to DOUKAS *vis a vis* the *Doukas/Ballard joint venture*. Moreover, declaratory judgment is sought establishing the joint venture's ownership of the *"elusive biometric character recognition"*, *"remote image capture and centralized storage"* and other technology and further, that all profits and proceeds generated by the *Doukas/Ballard joint venture*'s technology are properly paid to DOUKAS who absorbed all of the losses of the *Doukas/Ballard joint venture*. Finally, declaratory judgment is sought establishing DTC as an assignee of BALLARD and that all monies paid to DTC by banks who pay to use the *Doukas/Ballard* technology should be paying DOUKAS directly inasmuch as he is the equitable and actual owner of the technology.

4

4.    Insofar as this complaint seeks declaratory judgment establishing the various relationships described hereinabove, it also names various banking institutions that Plaintiffs believe are holding or owing money to DTC that properly belongs to DOUKAS inasmuch as the money being paid to DTC represents payments that relate to licensing the *Doukas/Ballard joint venture* technology.

5.    Insofar as damages go, aside from the equitable, statutory and provisional remedies, Plaintiffs seek Five Billion Dollars ($5,000,000,000.00) in compensatory damages, together with treble, punitive, exemplary and consequential damages no less than TEN BILLION DOLLARS ($10,000,000,000.00).

### The Parties

### Plaintiff, TED DOUKAS

6.    At all relevant times, Mr. DOUKAS was a resident of New York State, had his principal place of business located at 535 Broadhollow Road in Melville, New York and was the owner of the building situated at 535 Broadhollow Road in Melville, New York.

7.    Plaintiff, TED DOUKAS ("DOUKAS") is a real estate and mortgage entrepreneur who, beginning in late 1994/early 1995, invested in a joint venture that was singularly dedicated to the development of *"elusive biometric character recognition"*, *"remote image capture and centralized storage"* and other technology.

8.    DOUKAS was also the sole owner of all outstanding shares in the plaintiff corporate entity known as SYNGEN DATA SERVICES CORPORATION, a New York corporation created for the sole and precise purpose of owning and employing the technology that was promised to DOUKAS

5

by his joint venture partner, fiduciary, friend and confidant: Defendant, CLAUDIO BALLARD ("BALLARD").

9. Beginning in late 1994 and continuing through August, 1997, DOUKAS was in a joint venture partnership with BALLARD (the *Doukas/Ballard joint venture*), who proclaimed himself to be an inventor, technology wizard and computer scientist and who had an original idea he conceived in 1994, but lacked the financial wherewithal to see his ideas to fruition.

10. Relying on BALLARD's bold and repeated proclamations of originality, expertise. skill and experience, DOUKAS, based upon a firm and explicit understanding reached between the two parties *vis a vis* the parameters of the joint venture, invested hundreds of thousands of dollars toward the development of the technology that BALLARD promised he could deliver.

11. The purpose of the well defined and mutual joint venture agreement and understanding between DOUKAS and BALLARD (the *Doukas/Ballard joint venture*) was for BALLARD, relying on his expertise and computer skills, to develop and otherwise invent "*elusive biometric character recognition*", "*remote image capture and centralized storage*" and other related technology that was to benefit and be controlled by DOUKAS and the *Doukas/Ballard joint venture.*

12. In furtherance of the *Doukas/Ballard joint venture*, DOUKAS permitted BALLARD to operate rent free out of an office building owned by DOUKAS and DOUKAS funded the joint venture with cash and incurred debt on behalf of the joint venture. The office building was located at 535 Broadhollow Road in Melville, New York. The period of occupation *vis a vis* the *Doukas/Ballard joint venture* operating out of DOUKAS' office building

6

commenced in or about April/May of 1995 and was based on an earlier agreement made in February, 1995 after the two parties (DOUKAS and BALLARD) negotiated for about two months.

13. The cost of the office space reached almost $300,000.00 and actual cash and debt was another $600,000.00 that DOUKAS, in good faith and relying upon BALLARD's explicit and outwardly sincere representations, promises and clear and unequivocable assurances, poured into the *Doukas/Ballard joint venture*'s task of developing and owning "*elusive biometric character recognition*", "*remote image capture and centralized storage*" and other technology.

14. DOUKAS, anything but a technology buff, was lured, tricked, fraudulently induced and sucked into the *Doukas/Ballard joint venture* by BALLARD who took advantage of DOUKAS' ignorance *vis a vis* computers and technology, but promised DOUKAS one half (50%) ownership of the technology generated during the duration of the *Doukas/Ballard joint venture* which was indefinite but, according to BALLARD, anticipated to complete within "*six to eight months*" from the date of agreement which was in or around February 9, 1995.

15. Given the fact that BALLARD stood in such a superior position insofar as technology and worked hard to engender DOUKAS' trust *vis a vis* the development of the technology, BALLARD was a fiduciary to DOUKAS and DOUKAS, based upon BALLARD's sincere and explicit representations that whatever technology was produced by the joint venture would be jointly owned and all profits and losses divided equally, entrusted BALLARD with hundreds of thousands of dollars that were dedicated to the *Doukas/Ballard joint venture*'s

7

goal of developing the "*elusive biometric character recognition*", "*remote image capture and centralized storage*" and other technology.

16.    DOUKAS, giving all he had and was asked *vis a vis* advancing the *Doukas/Ballard joint venture*'s goal of producing "*elusive biometric character recognition*", "*remote image capture and centralized storage*" and other technology, carried virtually all costs and expenses that BALLARD said were necessary in order to succeed in its development and, in furtherance of the joint venture, DOUKAS, by BALLARD's own sworn admission, invested over $600,000.00 in cash and another $300,000.00 in free rent.  (Exhibit "C")

17.    Indeed, BALLARD, who, by his own public and sworn admissions was unemployed at the time (1994-1997), lived at the largess of the *Doukas/Ballard joint venture* and DOUKAS, in support of his joint venture partner, went as far as giving BALLARD cash to pay for food and other necessities, like clothing and gasoline.  (Exhibit "D")

18.    After the *Doukas/Ballard joint venture* produced a valuable and specifically identified technology and had achieved its stated goal, BALLARD, behind DOUKAS' back, surreptitiously and in violation of the *Doukas/Ballard joint venture* agreement, patented the technology in BALLARD's own name and then, without DOUKAS' knowledge or consent and in direct violation of the *Doukas/Ballard joint venture* partnership and the fiduciary duties BALLARD owed his good faith and joint venture partner DOUKAS, secretly, surreptitiously and fraudulently transferred ownership of the *Doukas/Ballard joint venture*'s technology and resulting patent first to CSP HOLDINGS INC. and thereafter to Defendant DATATREASURY, CORP. (DTC).  (Exhibits "A", "D" and "E")

19.    Because BALLARD worked hard to keep his deceptions a secret from his partner to whom he acted as a fiduciary, DOUKAS did not learn of

8

BALLARD's fraud and deceit until April 29, 2009, some fourteen years after being tricked by BALLARD who never disclosed to DOUKAS the existence of the patent, the development of the technology or the *Doukas/Ballard joint venture*'s ultimate success in making the *Doukas/Ballard joint venture*'s technology a reality.

20.  It is alleged by this complaint that BALLARD, in concert with the other Defendants and in direct contravention of his fiduciary role, took steps in order to keep the *Doukas/Ballard joint venture*'s actual success a secret from DOUKAS, that BALLARD conspired to defraud DOUKAS, intentionally tricked DOUKAS into believing the joint venture was a flop and covertly, with malice aforethought, sought to harm, damage, victimize and destroy his good faith partner, DOUKAS.

21.  By reason of the foregoing, DOUKAS asserts that DTC is an assignee of his rights and ownership privileges inherent in owning the *Doukas/Ballard joint venture*'s technology.

22.  DOUKAS further alleges that all money and profit paid to DTC by virtue of its claim of ownership and licensing of the *Doukas/Ballard joint venture*'s technology is properly owed exclusively to DOUKAS and DTC has no stake or equitable interest in the *Doukas/Ballard joint venture*'s technology as reflected in the patents filed by BALLARD during the time he was DOUKAS' fiduciary and joint venture partner. (Exhibits "A", "F" and "G")

23.  DOUKAS further alleges that all named banking institutions are constructive and equitable trustees of DOUKAS' money insofar as any money they have paid or will pay in order to use the *Doukas/Ballard joint venture*'s technology as is reflected in the fraudulently filed patent application dated August 27, 1997. (Exhibits "A", "F" and "G")

9

24.     It is further alleged by DOUKAS that all monies paid to DTC for licensing agreements related to the patent referred to as the "988", "137", "007" and "868" patents and reflected in Exhibits "A", "F" and "G" are properly those of DOUKAS and that DTC owes to DOUKAS 100% of all funds delivered to it, its owners, officers and directors as royalties, licensing or other agreements wherein money changed hands in order for a bank or other end user to employ or otherwise use the *Doukas/Ballard joint venture*'s technology.

25.     DOUKAS, as a result of the foregoing, is the equitable and actual owner of all profits generated by the use, enjoyment and licensing of the *Doukas/Ballard joint venture*'s technology.

## Plaintiff, SYNGEN DATA SERVICES CORPORATION

26.     At all times relevant herein, DOUKAS was the sole owner of all shares in the Plaintiff, SYNGEN DATA SERVICES CORPORATION, a corporate entity formed under the laws of New York State whose principal place of business was located at 535 Broadhollow Road in Melville, New York.

27.     By operation, and in furtherance of the *Doukas/Ballard joint venture*, after the *Doukas/Ballard joint venture*'s technology was developed, it was supposed to be patented in the names of DOUKAS and BALLARD and thereafter assigned to SYNGEN DATA SERVICES CORPORATION.

28.     By operation of the mutual understandings that comprised the *Doukas/Ballard joint venture*, two companies were to be merged; to wit: Defendant, SYNGEN CORPORATION. (BALLARD's company) and SYNGEN DATA SERVICES CORPORATION. (DOUKAS' company) and form one corporation; to wit: SYNGEN DATA SERVICES CORPORATION with Doukas owning 50% of the outstanding shares in the merged company.

10

29.     Pursuant to DOUKAS and BALLARD's joint venture agreement, mutual plan and understanding, SYNGEN CORPORATION, a corporation controlled by BALLARD, was to merge and be subsumed by SYNGEN DATA SERVICES CORPORATION, a corporation formed by DOUKAS for the express purpose of owning and holding all the technology created by the joint venture agreement and fiduciary relationship that existed between DOUKAS and BALLARD as reflected in the patent annexed hereto as Exhibit "A".

30.     Because the technology contemplated by the *Doukas/Ballard joint venture* was supposed to form the building blocks for future technology that would soon follow the initial invention of the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology promised by BALLARD, DOUKAS and/or SYNGEN DATA SERVICES CORPORATION were supposed to own all *"future technology"* and patents, as well as that which BALLARD promised would come in rapid succession after the original technology was created.

31.     Importantly, upon information and belief, BALLARD was the President and C.E.O. of SYNGEN CORPORATION and therefore the only person who could bind SYNGEN CORPORATION.  (Exhibit "C")

32.     Importantly, it was not discovered by DOUKAS that the joint venture actually produced the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology and reached its goal, until April 29, 2009, many years after DOUKAS and BALLARD reached a mutual agreement that was breached by BALLARD.  This delay in DOUKAS' discovery of BALLARD's treachery is solely attributed to the fraud perpetrated upon DOUKAS by BALLARD, DOUKAS' purported friend, confidant and fiduciary.

11

33.     Plaintiffs' belated discovery, that the *Doukas/Ballard joint venture* was successful in reaching its goal, was the direct result of BALLARD and DTC's continued conspiracy to keep the truth and facts regarding BALLARD's deceptive and surreptitious patent application and the *Doukas/Ballard joint venture*'s success a secret from DOUKAS.

34.     There was a clear and express understanding between the parties *vis a vis* the goals and objectives of the parties and the *Doukas/Ballard joint venture* itself and each understood how the profits and losses were to be distributed and both parties performed under this joint venture agreement.

### Defendant, SYNGEN CORPORATION.

35.     SYNGEN CORPORATION. was a Delaware corporation once controlled by BALLARD whose principal place of business was, from 1995 to 1997, located at 535 Broadhollow Road in Melville, New York, the building owned by Doukas.

36.     SYNGEN CORPORATION, according to the "*Doukas/Ballard joint venture*", was to merge with DOUKAS' SYNGEN DATA SERVICES CORPORATION after the technology was fully developed and patent filed under DOUKAS and BALLARD's names in order to hold the one asset of the merger and joint venture, to wit: the "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology created by the joint venture between 1995 and 1997. However, when the "*elusive biometric character recognition*" and "*remote image capture and centralized storage* technology was secretly and surreptitiously patented in 1997 by BALLARD, behind his DOUKAS' back and in violation of the fiduciary and partnership duties BALLARD owed to DOUKAS, BALLARD stole, converted, hypothecated

12

and removed the asset and called and coveted it as his own. (Exhibits "A", "D", "F" and "G")

### Defendant, CLAUDIO BALLARD

37.     BALLARD, a Suffolk County resident who, upon information and belief, resides at 11 West Neck Court, Lloyd Harbor, New York was a fiduciary to DOUKAS and DOUKAS' joint venture partner in developing the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology developed by the *Doukas/Ballard joint venture* between 1995 and when it was secretly and fraudulently patented in 1997 by BALLARD behind DOUKAS' back in direct contravention of the mutual understandings that comprised the *Doukas/Ballard joint venture*. (Exhibits "A", "D" and "E")

38.     At the time BALLARD secretly and surreptitiously filed the patent application that reflected the *Doukas/Ballard joint venture*'s technology, BALLARD was operating under the auspices of the joint venture and all technology developed under these auspices were to be owned and controlled by the *Doukas/Ballard joint venture*.

39.     It was during the very time (1995 to 1997) when the joint venture between BALLARD and DOUKAS was in full swing, that BALLARD deceptively, nefariously, surreptitiously, dishonestly, wrongfully and in direct breach of the understanding and fiduciary duties he owed to DOUKAS and BALLARD's representations, which prompted DOUKAS to pour hundreds of thousands of dollars into BALLARD's work *vis a vis* developing and inventing the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology, that BALLARD co-opted, stole and otherwise converted the *Doukas/Ballard joint venture*'s only asset and filed a patent

13

application in his own name but never told his joint venture partner and fiduciary, TED DOUKAS. (Exhibit "A")

40.     BALLARD's deception *vis a vis* filing the patent application without telling DOUKAS, his joint venture partner, constitutes a breach of good faith and loyalty so profound that the equitable and statutory remedies sought later on *vis a vis* attachment, receivership, and temporary restraining orders are authorized and appropriate.

41.     BALLARD and DOUKAS were joint venture partners in the development of *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.

42.     Because BALLARD was the only partner with particular knowledge *vis a vis* computers and technology, BALLARD had an unfair and distinct advantage, decidedly superior knowledge and, because this is so, BALLARD owed a fiduciary duty to DOUKAS that was violated when BALLARD, without ever telling DOUKAS, filed and obtained a patent in his own name and never informed DOUKAS that the joint venture was a success and had reached its goal of developing *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology. (Exhibits "A", "D", "F" and "G").

43.     That because of the nature of the joint venture relationship, and given the fact that BALLARD owed to DOUKAS a fiduciary obligation, BALLARD owed to DOUKAS a duty to disclose that the technology had been realized and the *Doukas/Ballard joint venture*'s goal had been reached.

44.     The technology surreptitiously, deceptively and secretly patented by BALLARD, behind his joint venture partner's back, was the same technology

14

that was the object of the *Doukas/Ballard joint venture*. (Exhibits "A", "D", "F" and "G").

45.     Plaintiff alleges that BALLARD, at the expense of the *Doukas/Ballard joint venture* partnership and violating his fiduciary obligations owed to DOUKAS and SYNGEN DATA SERVICES CORPORATION, transferred the patent and underlying technology obtained by the *Doukas/Ballard joint venture* first to CSP HOLDINGS INC. and thereafter to DATATREASURY CORPORATION, both Defendants in this action. (Exhibits "D", "F" and "G")

46.     These transfers and assignments of the valuable, indeed the only asset of the joint venture, constituted a fraud, violated the constructive trust that existed between the parties, breached the fiduciary duty BALLARD owed to DOUKAS, constituted a common law larceny and exemplified the level of trickery, treachery and deceit BALLARD was willing to carry out in order to haul his good will partner over the coals. By virtue of these facts, DOUKAS claims to own 100% of the technology inasmuch as he absorbed all of the losses incurred by the *Doukas/Ballard joint venture* and should benefit from all of the gains, including full ownership of the technology and resulting patent that BALLARD obtained by virtue of the *Doukas/Ballard joint venture*.

### Defendants PETER LUPOLI, VIRGINIA LUPOLI and CSP HOLDINGS INC.

47.     Defendants PETER LUPOLI and VIRGINIA LUPOLI (collectively "the LUPOLIs") were, by Ballard's own admission, co-conspirators of BALLARD in the fraud perpetrated by BALLARD against DOUKAS. (Exhibit "D")

15

48.     Upon information and belief, VIRGINIA LUPOLI is a resident of

Suffolk County, New York and is the sister of PETER LUPOLI whose address is

believed to be 4 Pam Lane. Huntington, New York 11743.

49.     In 1997, years after declining to invest in CLAUDIO BALLARD's

ideas, PETER LUPOLI, with the aid of BALLARD, swooped in and stole the

*Doukas/Ballard joint venture*'s technology after DOUKAS' contributions to the

*Doukas/Ballard joint venture* and office space provided the resources necessary to

bring the technology to fruition.

50.     By virtue of BALLARD's sworn affidavit, PETER LUPOLI paid

for the legal fees necessary for BALLARD to patent the *Doukas/Ballard joint*

*venture* technology while knowing that DOUKAS paid for the technology

development and that BALLARD was a joint venture partner and fiduciary of

DOUKAS'. (Exhibit "D")

51.     Upon information and belief, PETER LUPOLI is a domiciliary of

Santa Barbara, California and an attorney licensed in New York and whose

practice is located at P.O. Box 237, Cold Spring Harbor, New York 11724 and/or

12 Middle Hollow Road, Huntington, New York 11743.

52.     CSP HOLDINGS INC. is believed to be a defunct corporation that

acted as a conduit that transferred the *Doukas/Ballard joint venture*'s technology

from BALLARD to DTC.

53.     Upon information and belief, BALLARD was an officer, director

and shareholder of CSP HOLDINGS INC.

54.     Upon information and belief, BALLARD is the President of and a

shareholder in DTC.

55.     Upon information and belief, and based upon BALLARD's own

sworn admissions, CSP HOLDINGS INC. was the original assignee of the

16

*Doukas/Ballard* technology which, in 1999, was assigned to Defendant DTC.
(Exhibits "A" and "D")

56.     Both assignments were fraudulent and done without DOUKAS'
knowledge or consent and in direct contravention of the mutual agreements and
understandings that comprised the *Doukas/Ballard joint venture.*

## Defendant, DATATREASURY CORPORATION AND ITS LAWYERS, HAROLD NIX AND NIX PATTERSON & ROACH, LLP

57.     Upon information and belief, at the expense of DOUKAS and the
joint venture partnership, and after soaking DOUKAS for hundreds of thousands
of dollars, once BALLARD had his patent in hand, he wrongfully, secretly and
surreptitiously transferred ownership of the technology and the related patent to a
new company; to wit: Defendant, DATATREASURY CORPORATION
("DTC").

58.     Upon information and belief, DTC is a Delaware corporation
formed in 1998 after BALLARD obtained the patent properly owned by the
*Doukas/Ballard joint venture* formed in 1995.  Initially, and at all relevant time
periods, DTC had a principal place of business in Melville, New York.

59.     Upon information and belief, sometime thereafter, DTC, at the
suggestion of their patent attorneys, looking to avoid detection, relocated to a
remote part of Texas; to wit: 2301 W. Plano Parkway, Suite 106, Plano, Texas.

60.     Upon information and belief, DTC is the beneficial owner of all
proceeds generated by the sale and licensing of the *Doukas/Ballard joint venture*
technology and, therefore, DOUKAS is a 50% equitable owner of DTC and
entitled to 100% of all profits generated as the result of licensing agreements and
settlements obtained in Court and entered into by DTC, together with all monies
paid to DTC to use the *Doukas/Ballard joint venture*'s "*elusive biometric*

17

*character recognition"* and *"remote image capture and centralized storage"* technology.

61.     DOUKAS' claim to 100% of the profits stems from his absorbing 100% of the losses of the *Doukas/Ballard joint venture*.

62.     Upon information and belief, those now in control of DTC, together with Defendants HAROLD NIX and NIX PATTERSON & ROACH, LLP knowingly, willingly, maliciously and with wanton disregard of DOUKAS' ownership claim to the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology, ignored DOUKAS' entitlement and ownership interest, both actual and equitable, in the technology now claimed to be owned by DTC and therefore, all obligations owed to DOUKAS by BALLARD, emanating from the *"Doukas/Ballard joint venture"* and now owned by DTC, are obligations DTC now owes to DOUKAS. (Exhibits "A", "D", "E", "F" and "G") In other words, aside from future earnings, DOUKAS is entitled to 100% of all past profits generated by the *"Doukas/Ballard joint venture's"* technology, now fraudulently claimed to be owned by DTC as the result of BALLARD's fraudulent assignment of the *Doukas/Ballard* technology to DTC.  Further, as attorney for DTC, HAROLD NIX and his firm NIX PATTERSON & ROACH, LLP have collected hundreds of millions of dollars in legal fees properly owed to Doukas.

63.     By reason of the foregoing, DTC, HAROLD NIX and NIX PATTERSON & ROACH, LLP are the constructive trustees and fiduciaries to DOUKAS, like BALLARD, have violated their obligations owed to DOUKAS and has done so with malice and wanton disregard of DOUKAS' equitable and actual ownership of the technology as reflected in the patent secretly filed by BALLARD and which represented the *Doukas/Ballard joint venture's* *"elusive*

18

*biometric character recognition"* and *"remote image capture and centralized storage"* technology. (Exhibit "A", "D", "E", "F" and "G")

64.    Upon information and belief, DTC is a corrupt corporate entity and has worked hard to keep DOUKAS from knowing the truth about his ownership interest in the *"Doukas/Ballard joint venture"* technology, now held by DTC. On the other hand, NIX PATTERSON & ROACH, LLP have been engaged by DTC to pursue DTC's fraudulent claims insofar as the Doukas/Ballard technology is concerned.

65.    Upon information and belief, DTC has conspired with others, yet unknown but not limited to the various banking institutions, HAROLD NIX, NIX PATTERSON & ROACH, LLP and other named Defendants, to keep DOUKAS in the dark and ignorant, insofar as the value of his interest in the *Doukas/Ballard joint venture*'s *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology, and continued on with the fraud, deception and shocking acts of disloyalty first shown by BALLARD, and later advanced by DTC, its lawyers (HAROLD NIX and NIX PATTERSON & ROACH, LLP) and majority shareholders, including KEITH DELUCIA a/k/a "KEITH Wickey" a/k/a "KEITH Doyle", SHEPHARD LANE and BALLARD, the individuals named in this action.

66.    Upon information and belief, DTC and its lawyers, in order to defraud, trick and deceive DOUKAS, has engaged in conduct that shocks the conscience of the community and rises to levels that border on criminal which, in turn, entitles DOUKAS to exemplary, punitive and treble damages together with legal fees and costs associated with this litigation.

67.    Upon information and belief, DTC and its lawyers, in furtherance of the conspiracy to hide the truth from DOUKAS, *vis a vis* the value and

19

existence of the *Doukas/Ballard joint venture*'s "*elusive biometric character recognition* and "*remote image capture and centralized storage*" technology, moved its operations to a far away location such as Plano, Texas, is not registered to do business in New York and engaged in other outrageous conduct in order to diminish DOUKAS' prospective entitlements and ability to recover. (Exhibit "H")

68.     Based on the foregoing and as complained of later on, Plaintiff is entitled to orders of attachment, the appointment of a Receiver and injunctive relief.

69.     Upon information and belief, DTC has defrauded others, including its shareholders insofar as the value of settlements obtained from banking institutions that have used the *Doukas/Ballard joint venture*'s "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology without DOUKAS' permission. For example, it is believed upon certain information that DTC has misinformed shareholders of a private settlement with J.P. Morgan Chase wherein it is believed that DTC told its shareholders a settlement of $60,000,000.00 was arrived at when, in fact, it was actually $600,000,000.00. This $540,000,000.00 discrepancy has never been explained but believed to be part of a money laundering scheme between DTC and its lawyers at the now criminally convicted "*Dreier firm*", a firm that spawned SHEPHARD LANE and Richard B. Friedman. This level of skullduggery goes a long way to establishing why an order granting an Attachment, the appointment of a Receiver and temporary restraining orders are appropriate.

## Defendant, KEITH DELUCIA a/k/a "KEITH WICKEY" a/k/a "KEITH DOYLE"

70.     Upon information and belief, Defendant, KEITH DELUCIA a/k/a "KEITH WICKEY" a/k/a "KEITH DOYLE" ("DELUCIA"), is a resident of Suffolk County and now owns a majority of the shares in DTC, the corporation that currently owns and controls the *Doukas/Ballard joint venture*'s *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.  (Exhibits "A", "D", "E", "F" and "G").

71.     Upon information and belief, BALLARD, after spiriting the technology away from DOUKAS, transferred the patent and the technology to DTC and did so at the behest of DELUCIA and others, including Defendant, SHEPHARD LANE ("LANE"), and a corrupt law firm that LANE was associated with; to wit: the *"Dreier firm"*.

72.     Upon information and belief, BALLARD and those at DTC, including DELUCIA, LANE and their *"spearcatcher"* lawyer, Richard B. Friedman, conspired, concealed and intentionally hid from DOUKAS both the value of the technology created by the *Doukas/Ballard joint venture* and the fact that it was transferred behind DOUKAS' back to a new entity called DTC.  In furtherance of this scheme, DTC paid off lawyer MICHAEL SHORE in order to silence him *vis a vis* Doukas' entitlements under the *Doukas/Ballard joint venture*.

73.     Upon information and belief, DELUCIA knowingly, willingly, intentionally and fraudulently interfered with DOUKAS and the other Plaintiffs' contractual rights insofar as they existed between SYNGEN CORPORATION, SYNGEN DATA SERVICES CORPORATION, DOUKAS and BALLARD, as well as the *Doukas/Ballard joint venture*.

21

74.    Upon information and belief, DELUCIA sought to conceal, cover up and hide from DOUKAS the success of the *Doukas/Ballard joint venture* and, *inter alia*, sought to deprive DOUKAS what he was entitled to by virtue of the secret success of the *Doukas/Ballard joint venture* and the profits properly owed to DOUKAS, instead diverting such interests to DTC, DELUCIA and others.

75.    That, by virtue of the foregoing, DELUCIA and his aliases owe to DOUKAS all monies DELUCIA has been paid as the result of his position at DTC and monies he received as the result of his ownership of DTC stock.

### Defendant, SHEPHARD LANE

76.    Upon information and belief, LANE is general counsel to DTC and is a major shareholder of DTC.

77.    LANE's home address is unknown to Plaintiffs but, upon information and belief, he has an actual place of business located at 405 Lexington Avenue, Floor 62, New York, New York 10174.

78.    Upon information and belief, LANE is an attorney and licensed to practice law in the State of New York.  (Exhibit "I")

79.    Upon information and belief, LANE knowingly, wrongfully, intentionally and with wanton disregard of DOUKAS' rights and benefits of ownership and contractual rights to the technology and profits that were generated by its mere existence, conspired to keep secret the fact that the *Doukas/Ballard joint venture* was a success and further, that BALLARD had defrauded DOUKAS by transferring the technology properly owned by the *Doukas/Ballard joint venture* to DTC.

80.    Upon information and belief, LANE intentionally interfered with DOUKAS' contractual rights as they pertain to ownership of the technology and the benefits and income gained by the patent which is grounded upon the

22

*Doukas/Ballard joint venture "elusive biometric character recognition* and "*remote image capture and centralized storage*" technology and now, to the detriment of DOUKAS, being collected by DTC and fraudulently distributed to DTC and its shareholders.

81.     Upon information and belief, LANE, with malevolent indifference to DOUKAS' rights and entitlements, destroyed, covered up and damaged DOUKAS and his entitlements and rights to the extent that, as a direct result of LANE's gross and shocking misconduct, DOUKAS has been deprived of all of the benefits and entitlements of ownership of the technology.

82.     Because of the fiduciary relationship LANE established with DTC, it is alleged that because DOUKAS is the equitable owner of DTC, LANE owed to DOUKAS a fiduciary duty.

83.     That LANE breached the fiduciary duty he owed to DOUKAS.

84.     That LANE owes to DOUKAS all monies, profits and shares he currently owns or has received, as a direct or indirect result of the abovementioned technology, inasmuch as they were obtained at the expense of the transferred fiduciary duty LANE owed to DOUKAS.

### Defendants: The Banks

85.     In this action, Plaintiffs name several banking institutions that, upon information and belief, currently license the *Doukas/Ballard joint venture*'s technology. Upon information and belief, there are other banking institutions that have yet to settle claims *vis a vis* licensing the Doukas/Ballard technology and unknown to Plaintiffs.

86.     It is alleged by this complaint that the named banking institutions either knowingly, or as the product of the fraud perpetrated by the other Defendants, namely DTC, DELUCIA, LANE and BALLARD, converted, stole,

23

transmuted, hypothecated, diverted or licensed the *Doukas/Ballard joint venture* technology and did so without DOUKAS' consent and without properly compensating DOUKAS.

87.    That by virtue of all that is set forth in this complaint, the banking institutions named in the complaint knowingly, negligently and in concert with the other Defendants, namely DTC, DELUCIA, LANE and BALLARD, owe to DOUKAS and the *Doukas/Ballard joint venture* an amount equal to 100% of all monies distributed to DTC for licensing agreements paid to DTC.

88.    That, by virtue of a fraud perpetrated by those at DTC, DELUCIA, LANE and BALLARD, the Defendant banks, knowingly paid money properly owed to the *Doukas/Ballard joint venture* to DTC.

89.    That by virtue of the foregoing, all banking institutions named in this complaint are constructive trustees of DOUKAS and hold monies and property due and owing to DOUKAS by virtue of the *Doukas/Ballard joint venture*.

### The *Doukas/Ballard joint venture*

90.    The joint venture at the center of this dispute was formed in Suffolk County in 1994/1995 in order for DOUKAS and BALLARD to successfully develop an elusive type of biometric recognition and remote image capture technology as was later reflected in a patent application made by BALLARD behind the back of DOUKAS, his joint venture partner and fiduciary ("the *Doukas/Ballard joint venture*").

91.    According to BALLARD, the joint venture was expected to reach its goal of developing the technology "*within six to eight months*" but, despite BALLARD's promises and DOUKAS' expectations, upon information and belief,

24

in actuality, it took almost two years for the *Doukas/Ballard joint venture* to reach its goal as is reflected in the August 27, 1997 patent application. (Exhibit "A").

92.     The parties to the *Doukas/Ballard joint venture*, DOUKAS and BALLARD, each understood how the profits and losses were to be shared and both parties for a period in excess of two years fully performed all of the mutual obligations owed to each other and the joint venture.

93.     While it was contemplated by both DOUKAS and BALLARD that the end product of the joint venture was to be assigned to SYNGEN DATA SERVICES CORPORATION, BALLARD patented the *Doukas/Ballard joint venture* technology, in his name alone, failing to file the patent in both the names DOUKAS and BALLARD, as previously agreed. (Exhibit "A")

94.     Factually, BALLARD never placed the *Doukas/Ballard* technology into DOUKAS' name, instead placing the patent under his own name in direct defiance of the mutual agreement that existed between the two and in violation of the *Doukas/Ballard joint venture* agreement. (Exhibit "A")

95.     The *Doukas/Ballard joint venture* could have taken as little as a few months to reach its goal, but when actual success was accomplished is unknown at this time inasmuch as BALLARD stole, secreted, converted, diverted, hypothecated and otherwise transferred the technology and spirited it away, leaving DOUKAS with no way of knowing that the joint venture he invested hundreds of thousands of dollars in was a success *vis a vis "elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.

96.     Upon information and belief and according to BALLARD's own sworn affidavit, the *Doukas/Ballard joint venture* reached its stated goal and purpose which was the development of the *"elusive biometric character*

25

*recognition"* and *"remote image capture and centralized storage"* technology sometime in the late spring/early summer of 1997. (Exhibits "A", "D", "E", "F" and "G")

97.     Upon information and belief, BALLARD knowingly, intentionally and without DOUKAS' knowledge and consent, defrauded, wasted, transferred and dissipated the only asset of the joint venture, to wit: the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology that was being pursued by the joint venture and the pursuit of which was integral to the formation of the joint venture.

98.     The joint venture was formed and existed for a very clear and precise reason; to develop, create and own a specific type of *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology and future technology that was to be based on the original invention.

99.     Upon information and belief, during the time that the joint venture was active, BALLARD, the partner who was in absolute control over the technology and its development secretly, surreptitiously and in total disregard to the fiduciary duty he owed to his good will joint venture partner, converted, transferred, hypothecated, spirited away and stole the *Doukas/Ballard joint venture*'s only asset, to wit: the *"elusive biometric character recognition* and *"remote image capture and centralized storage"* technology.  And by doing so, BALLARD breached the fiduciary duty he owed to DOUKAS and the terms of the joint venture agreement, damaging DOUKAS into the billions of dollars.

100.    By virtue of these facts, DOUKAS claims to own 100% of the joint venture's assets, inasmuch as he absorbed 100% of the joint venture's losses.

26

### The Joint Venture Agreement of February 1995

101.    The joint venture agreement ("the agreement"), existing between DOUKAS and BALLARD, was simple and straightforward and could have been completed within several months but, because of unforeseeable delays and foot-dragging on BALLARD's part, took almost two years.

102.    The agreement provided that BALLARD was to work toward the development of the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology and, based upon BALLARD's representations *vis a vis* being a computer *"wiz"*, inventor and computer scientist, BALLARD was solely in charge of all aspects of developing and inventing the technology.

103.    It was BALLARD's self-proclaimed expertise in computers that comprised his contribution to the joint venture partnership.

104.    DOUKAS, relying on BALLARD's statements, agreed to form a joint venture partnership with BALLARD.

105.    DOUKAS invested money into the joint venture, incurred debt, and provided the office space to BALLARD which functioned as a work place necessary for BALLARD to pursue the development of the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.

106.    DOUKAS fully performed all of his obligations arising under the agreement by providing 5,000 square feet of prime office space located on the Route 110 corridor at a monthly rate of $10,000.00 per month and pumping over $600,000.00 in working capital into the joint venture.

107.    In addition to funding the joint venture and providing the space necessary to develop the technology, DOUKAS, being a good will investor and

27

joint venture partner, actually paid his partner's (BALLARD's) living expenses as evidenced by BALLARD's own sworn affidavit of January 30, 2006. (Exhibit "E").

108.    BALLARD has admitted these facts in a series of affidavits and on the record admissions.

109.    The agreement contemplated ownership, patenting and licensing of the technology and all technology developed based upon it, which was supposed to be completed within one year.

110.    The joint venture existed to create and patent *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology; the joint venture partners agreed to contribute toward the success of the partnership, with BALLARD contributing his expertise in computers and inventive ideas and DOUKAS providing the working capital and the office space. In reliance on each other's representations and mutual promises, each party fully performed their end of the bargain until that is, BALLARD, in an unbridled act of greed and treachery, defrauded DOUKAS and the *Doukas/Ballard joint venture* of their interests in the technology that was the product of the joint venture, by stealing it from the *Doukas/Ballard joint venture* and delivering it to CSP HOLDINGS INC. and later on to DATATREASURY CORP.

111.    Because of BALLARD's deception, fraud and continuing conspiracy to keep his joint venture partner ignorant as to the success of the *Doukas/Ballard joint venture* and actual development of the technology, DOUKAS did not learn the partnership was a success and that the technology had actually been invented until April 29, 2010.

112.    The *Doukas/Ballard joint venture*'s duration was initially anticipated to be a few months beginning in April of 1995 and was supposed to

28

end with the filing of a joint patent application (DOUKAS and BALLARD) within a year as promised by BALLARD and relied upon by DOUKAS.

113.    Each party (DOUKAS and BALLARD) understood and agreed that the profits and losses were to be divided equally, but because BALLARD breached the duty he owed DOUKAS, DOUKAS now seeks 100% of the profits properly owed to the joint venture; to wit: five billion dollars ($5,000,000,000.00).

114.    Accordingly, by virtue of these asserted facts, a joint venture existed and BALLARD, his heirs, successors and assigns all should be bound by it and those involved in trickery, fraud, deceit, malevolent indifference, larceny and all the other nefarious and quasi-criminal acts complained herein should be held accountable to DOUKAS insofar as the profits, proceeds and monies paid relevant to the *Doukas/Ballard joint venture*'s technology.

### The Product of the *Doukas/Ballard joint venture* Agreement: the "*elusive biometric character recognition* and "*remote image capture and centralized storage*" technology

115.    Sometime in 1997, under the auspices of, and with the money given over to the joint venture by DOUKAS, BALLARD was successful in creating the "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology that was the stated goal of the *Doukas/Ballard joint venture*. (Exhibits "A", "F" and "G").

116.    Upon information and belief, BALLARD, with intent to trick, deceive and defraud DOUKAS, and in violation of the fiduciary duties BALLARD owed to DOUKAS (his fiduciary and good will joint venture partner), conspiring with DTC, CSP HOLDINGS INC., the LUPOLIs, DELUCIA and LANE nefariously, secretly, maliciously, intentionally and with wanton disregard to his duties of loyalty, good faith and fair dealing, patented the *Doukas/Ballard*

29

*joint venture*'s "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology and transferred it first to an entity known as CPS HOLDINGS INC. and later to DTC, non-joint venture partners.

117.    This transfer constitutes an act of common law larceny and an intentional breach of the fiduciary obligation BALLARD owed to DOUKAS and was also a profound breach of the *Doukas/Ballard joint venture* partnership agreement.

118.    This deceptive, disloyal and fraudulent conveyance of joint venture assets was engaged in for the express purpose of stealing from DOUKAS <u>billions of dollars</u>, plus being a part of a broader conspiracy to swindle DOUKAS out of the profits, benefits and money that was earned as a product of the joint venture and the "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology it produced.

### The Time Period

119.    While the joint venture was to last and could have been completed in less than a year, in order to develop the technology (and get the patent), it took almost two years.  (Exhibits "A", "C", "F" and "G").

### The Proceeds of the *Doukas/Ballard joint venture*

120.    Upon information and belief, subsequent to BALLARD's fraud upon DOUKAS and continuing to even-date herewith, DTC, the corrupt organization that BALLARD assigned "*his*" patent to, has collected over <u>two billion dollars</u> in settlements and licensing agreements against those who employed the *Doukas/Ballard joint venture*'s technology without permission.  All of these proceeds were diverted away from the lawful owner (DOUKAS) and converted against DOUKAS' will and in direct contravention of the *Doukas/Ballard joint venture* agreement.

30

121.   While DTC may now be the owner of the *Doukas/Ballard* technology and patent and may be the current owner of the *Doukas/Ballard joint venture* technology (the only asset of and created by the *Doukas/Ballard joint venture*), DTC's ownership is illegitimate, the product of fraud, conversion, trickery and deceit that would shock the conscience of the community.

122.   All proceeds generated by DTC, in its settlements and litigation enforcing the patent obtained by BALLARD with the *Doukas/Ballard joint venture*'s money and based upon the technology created by the joint venture are, by mutual agreement, 50% DOUKAS' and DTC, as a bad faith assignee of BALLARD, should be held accountable to DOUKAS for 100% of all proceeds inasmuch as DOUKAS absorbed all the losses of the joint venture and is thereby entitled to 100% of the profit.

123.   DOUKAS, by virtue of the clear and express terms of the *Doukas/Ballard joint venture* agreement existing between DOUKAS and BALLARD, and DOUKAS' full performance of his obligations owed to and in support of the joint venture and the complete agreement regarding the joint venture, is owed an amount to be determined by this honorable court, but not less than FIVE BILLION DOLLARS ($5,000,000,000.00).

124.   Plaintiffs, based upon BALLARD's skullduggery, deceptive tactics and outright scheme to defraud DOUKAS, his good will partner and principal, are entitled to constructive and equitable trusts in the amount to be determined by this honorable court, but no less than FIVE BILLION DOLLARS ($5,000,000,000.00).

125.   These constructive trusts should be imposed against all Defendants, including but not limited to all banking institutions, DELUCIA and his aliases, DTC and LANE.

31

126.    In this litigation, DOUKAS is owed in excess of FIVE BILLION

DOLLARS ($5,000,000,000.00) plus the return of the object of the joint venture.

In other words, DTC should be stripped of its ownership rights to the

*Doukas/Ballard joint venture*'s technology and all benefits received by virtue of

the technology developed under the auspices of the *Doukas/Ballard joint venture*

and the technology developed under its auspices should be returned to DOUKAS.

127.    Here, because DOUKAS was swindled at the hands of several

professional con-men and absorbed <u>all</u> of the losses of the joint venture, he is also

entitled to all of the profits; to wit: an amount to be determined by this Court, but

in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00).

### What's at Stake in This Litigation

128.    This litigation contemplates staggering amounts of money.  Upon

information and belief, DTC, the unlawful and illegitimate owner of the

*Doukas/Ballard joint venture* technology has already generated perhaps over two

billion dollars ($2,000,000,000.00) in profits with billions of dollars more

expected.

129.    Upon information and belief, DOUKAS, was intentionally lied to,

defrauded, tricked, deceived and made a victim of a widespread and diabolical

conspiracy at the hands of BALLARD, DELUCIA, LANE, the LUPOLIs and

DTC.

130.    Upon information and belief, DTC, a closely held, subchapter "C"

corporation, using the *Doukas/Ballard* technology, already collected vast amounts

of money, dissipated same, secreted hundreds of millions of dollars, perhaps

billions, and gave DELUCIA, LANE and BALLARD staggering amounts of

money properly owed to the *Doukas/Ballard joint venture*.

### The Transferrable Constructive Trust and Fiduciary Obligations
### BALLARD Owed to DOUKAS

131.    BALLARD's relationship with DOUKAS was one elevated to the status of fiduciary.

132.    TED DOUKAS knew little or nothing about computer technology nor was he versed in originating or developing technology. This fact gave BALLARD an unfair and superior advantage over DOUKAS, who relied solely on BALLARD's representations *vis a vis* the development of the technology.

133.    The division of labor in this joint venture is easily defined and further proves the existence of a fiduciary and constructive trust relationship BALLARD owed to DOUKAS.

134.    In the day to day operation of the *Doukas/Ballard joint venture*, BALLARD had exclusive and total control over all the employees and what tasks they were assigned. BALLARD was the only member of the *Doukas/Ballard joint venture* with any real insight into how the development of the technology was progressing and because this is so, acted in a fiduciary capacity to DOUKAS.

135.    DOUKAS, on the other hand, was only responsible to contribute money and office space which he did until August 1997 while BALLARD had already secretly filed a patent in his name alone and by doing so, wrongfully abandoned DOUKAS and stole a valuable asset from the *Doukas/Ballard joint venture*. (Exhibits "A", "E" and "F")

136.    That based upon BALLARD's representations and promises, DOUKAS entrusted BALLARD with hundreds of thousands of dollars and expected to own 50% of the technology that the *Doukas/Ballard joint venture* pursued and ultimately obtained in 1997. (Exhibit "A")

33

137.    That BALLARD, in a further attempt to advance his fraudulent scheme against DOUKAS, made DOUKAS take an oath of secrecy regarding the success of the *Doukas/Ballard joint venture* and the technology that was contemplated by the joint venture.

138.    That BALLARD wrongfully, knowingly, intentionally and in direct contravention of the fiduciary duty he owed to DOUKAS, by virtue of his superior knowledge about computers and the total control over the day to day operations of the joint venture, as well as development of the technology, breached his promises and violated the fiduciary duty he owed to DOUKAS.

139.    By virtue of the facts, there existed a constructive trust between BALLARD and DOUKAS concerning the technology reflected in the patent application BALLARD filed in his own name in June of 1997; a time when the *Doukas/Ballard joint venture* was operational and by BALLARD's own sworn admission. his only source of development funds.

140.    That as a result of the foregoing, all Defendants owed to DOUKAS the duties BALLARD owed to DOUKAS.

**The Agreement of February 9, 2010**

141.    In February 2010, Defendant's, either alone or acting in concert with one another, furthered their conspiracy to defraud, divert, steal, convert and breach the duty of good faith and covenant of fair dealing with DOUKAS when settlement discussions surrounding DOUKAS' claims came to a head.

142.    On February 9, 2010, Defendants, either alone or acting in concert with one another, tricked, deceived and wrongfully and intentionally lured DOUKAS into signing an agreement and an affidavit. (Exhibit "B")

143. That on February 9, 2010, Defendants, either alone or in concert with one another, had no intention of living up to the promises made in the agreement.

144. That on February 9, 2010, when this proposed settlement agreement was made and entered, Defendants, either alone or in concert with each other, breached the duty of good faith and fair dealing owed to DOUKAS by signing the agreement without any intention of ever living up to or abiding by its terms and by delivering to DOUKAS a phony check in the amount of $125,000.00 that could not be negotiated by any bank.

145. That since February 9, 2010, Defendants, either alone or in concert with each other, repudiated, rejected, abandoned and voided the agreement made and entered on February 9, 2010.

146. That on February 9, 2010, by luring DOUKAS into signing an agreement, general release and affidavit without ever intending on complying with or living up to its terms, Defendants, either alone or in concert with each other, fraudulently induced DOUKAS into signing the agreement which, by its terms, is the product of trickery, deceit, fraud and malevolent indifference and is, as was later discovered by Plaintiffs but known to Defendants, unconscionable.

147. By the intentional wrongful, deceptive and outrageous behavior of Defendants, either alone or in concert with each other, DOUKAS was unfairly lured into signing the February 9, 2010 agreement which was engendered by Defendants' intentional and negligent misrepresentations, fraud and mistake.

148. That the agreement dated February 9, 2010, because of Defendants' lack of good faith and failure to abide by any of its terms, the parties to it have clearly and unequivocally expressed their mutual desire to terminate the

35

contract and restore themselves to the pre-execution status (*status quo ante*) each occupied before DOUKAS was tricked into signing said agreement. (Exhibit "B")

## Causes of Action
(The *Doukas/Ballard joint venture*)

### As and For a First Cause of Action.
(Fraud-All Defendants)

149.    Plaintiffs restate and re-allege all paragraphs previously identified as "1" through "148" as is fully set forth herein.

150.    Beginning in late 1994 and continuing until the present time, the Defendants named in this action, whether alone or in concert with each other, intentionally, knowingly and with reckless disregard of the rights and duties owed to Plaintiffs, defrauded Plaintiffs and the object of said fraud was DOUKAS' rights, title and interest in the technology that was sponsored, developed, created and engineered with DOUKAS' earnest money given to BALLARD under the false pretenses that investing said funds in the *Doukas/Ballard joint venture* would inure to the benefit of the joint venture agreement referred to herein as the *Doukas/Ballard joint venture*.

151.    That in furtherance of this scheme to defraud DOUKAS, Defendants BALLARD, LANE and DELUCIA, together with others yet unknown to Plaintiff, secreted information, lied and intentionally misled DOUKAS into believing that the joint venture failed to produce any technology when in fact, the *Doukas/Ballard joint venture* had reached its stated goal of producing *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology as reflected in the patent surreptitiously and in direct violation of the express and unequivocal terms of the *Doukas/Ballard joint*

36

*venture* agreement stolen by BALLARD, DELUCIA, LANE and others who remain unknown to Plaintiffs.

152.    That by design, BALLARD and the other Defendants intentionally and secretly patented the *Doukas/Ballard* technology behind DOUKAS' back and never told DOUKAS that the joint venture was a success *vis a vis* developing "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology.

153.    That beginning in late 1994 there were preliminary discussions between, *inter alia*, DOUKAS and BALLARD *vis a vis* the formation of a joint venture partnership whose sole and singular object was to create, develop, engineer and own "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology.

154.    That in late 1994/early 1995, DOUKAS and BALLARD reached a firm understanding *vis a vis* the parameters of the joint venture which included a 50% - 50% distribution of all profits and losses and that BALLARD was to create, design and oversee the development of "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology which was to be owned by the *Doukas/Ballard joint venture*.

155.    In reliance on BALLARD's promises, representations, guarantees, conduct and the firm and unequivocal joint venture understanding reached between DOUKAS and BALLARD, DOUKAS fulfilled and performed his obligations under the *Doukas/Ballard joint venture* agreement by investing over $600,000,000.00 toward the joint venture's success and providing free office space at DOUKAS' office building located at 535 Broadhollow Road in Melville, New York.

37

156.    That BALLARD, in further of the *Doukas/Ballard joint venture* began working from DOUKAS' office building in the early spring of 1995 and remained there until August, 1997.

157.    That in or around August 27, 1997, BALLARD deceptively, wrongfully, knowingly and fraudulently co-opted the technology properly owned by the joint venture and filed a patent in his own name and did so without his good faith joint venture partner being made aware. (Exhibits "A", "F", "G" and "H")

158.    That BALLARD's callous, deceptive, deplorable and outrageous breach of good faith and his intentional fraud upon his fiduciary and joint venture partner, DOUKAS constitutes a fraud upon DOUKAS.

159.    That each of the co-Defendants to this case, either individually or in concert with one another, participated, encouraged, importuned and acted in a way that advanced the "*BALLARD/DTC fraud*" perpetrated upon DOUKAS.

160.    Based upon Defendants' breach of the *Doukas/Ballard joint venture* agreement, Defendants owe and Plaintiffs demand FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages of TEN BILLION DOLLARS ($10,000,000,000.00).

### As and For a Second Cause of Action
(Aiding and Abetting in a fraud)

161.    Plaintiffs restate, re-allege and show paragraphs "1" through "160" as is fully set forth herein.

162.    That the Defendants named herein had actual knowledge of DOUKAS' interest in the *Doukas/Ballard joint venture* technology.

163.    Specifically, upon information and belief, on or around Columbus Day 1994, BALLARD approached the LUPOLIs and sought their funding for

developing his ideas into the *Doukas/Ballard joint venture* technology and the LUPOLIs denied BALLARD's request.

164.    That after the LUPOLIS denied funding, BALLARD, in order to develop his ideas into the *Doukas/Ballard joint venture* technology described herein, BALLARD entered into the *Doukas/Ballard joint venture* with DOUKAS for developing the *Doukas/Ballard joint venture* technology.

165.    That upon information and belief, after the *Doukas/Ballard joint venture* was, unbeknownst to DOUKAS, successful in reaching its goal regarding developing the *Doukas/Ballard joint venture* technology, BALLARD again approached the LUPOLI's in or around January or February 1997 who conspired with BALLARD to wrongfully, knowingly and fraudulently co-opt the technology properly owned by the *Doukas/Ballard joint venture* and file a patent in BALLARD's own name and doing so without informing DOUKAS or making DOUKAS aware that BALLARD was filing a patent for said technology under a corporate entity CSP HOLDINGS INC.

166.    That upon information and belief, the Defendants, DTC, DELUCIA, and LANE, after being approached by BALLARD along with the LUPOLIs assisted BALLARD by incorporating DTC to take over possession of the technology and the patent and defraud DOUKAS of his interest in the *Doukas/Ballard joint venture* technology.

167.    That Defendants provided BALLARD with substantial assistance to defraud DOUKAS out of his interest in the *Doukas/Ballard joint venture* technology and assisted BALLARD in his deceptively, wrongfully, knowingly and fraudulently co-opting the technology properly owned by the *Doukas/Ballard joint venture* and filing a patent in BALLARD's own name and doing so without informing DOUKAS or making DOUKAS aware that BALLARD was filing a

39

patent for said technology in his own name and assigning it to a corporate entity commonly referred to as CSP HOLDINGS INC.

168. That upon information and belief, the Defendants, BANK OF AMERICA, WELLS FARGO, CITIBANK, BANK HAPOALIM, BANCORPSOUTH, INC., INTUIT, INC., KEYCORP and KEYBANK NATIONAL ASSOC., JP MORGAN CHASE & CO., INGENICO, JP MORGAN CHASE BANK, M&T BANK CORP., MERRILL LYNCH, UNION BANK OF CALIFORNIA, PNC FINANCIAL SERVICES GROUP, CHARLES SCHWAB & CO., INC and CHARLES SCHWAB BANK, MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., PNC FINANCIAL SERVICES GROUP, THE ROYAL BANK OF SCOTLAND GROUP, SUNTRUST BANK, INC., WELLS FARGO & COMPANY, BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE BANK OF NEW YORK MELLON CORPORATION, THE BANK OF NEW YORK MELLON, CITIGROUP, INC., CITIBANK, N.A., CITY NATIONAL BANK, COMMUNITY BANKING SYSTEMS, BRANCH BANKING AND TRUST CORPORATION, COMERICA BANK, COMERICA INCORPORATED, COMPASS BANCSHARES, INC., COMPASS BANK, DEUSTSCHE BANK, EDWARD D. JONES & CO., L.P., HSBC NORTH AMERICA HOLDINGS INC., HSBC BANK USA, N.A., FIRST TENNESSEE BANK NATIONAL ASSOCIATION, CULLEN/FROST BANKERS, INC., and THE FROST NATIONAL BANK, and UNIDENTIFIED CORPORATE ENTITIES "1" THROUGH "75" (collectively "the Defendant Banks"), had actual knowledge of DOUKAS' interest in the *Doukas/Ballard joint venture* and intentionally assisted the other Defendants in defrauding Doukas.

169. That upon information and belief, the Defendant Banks, knowing they were aiding and abetting in the fraud committed against DOUKAS,

40

intentionally secreted settlements with DTC to keep DOUKAS from learning of the success of the *Doukas/Ballard joint venture* and to shield themselves from any liability regarding DOUKAS' claims to said *Doukas/Ballard joint venture* technology.

170.    That as a result of Defendants' aiding and abetting BALLARD in defrauding DOUKAS out of his interest in the *Doukas/Ballard joint venture* technology, Plaintiff has been damaged in an amount no less than FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages of TEN BILLION DOLLARS ($10,000,000,000.00).

### As and For a Third Cause of Action
(Breach of a Constructive Trust)

171.    Plaintiffs restate, re-allege and show paragraphs "1" through "170" as is fully set forth herein.

172.    That beginning February, 1995 and continuing through August, 1997, BALLARD, with the aid and abettance of all other Defendants, inveigled, conned, tricked, lured and wrongfully induced DOUKAS into believing that BALLARD was DOUKAS' fiduciary, friend and confidant and that the two (BALLARD and DOUKAS) shared a confidential relationship.

173.    That BALLARD held superior knowledge of all things "*technical*" and, because of his absolute control over the technology development and engineering, held a distinct advantage over his good will and fiduciary joint venture partner, DOUKAS.

174.    That BALLARD and DOUKAS both agreed that their efforts had to remain a secret in order to protect against piracy.

175.    That based upon these promises, the *Doukas/Ballard* relationship was a confidential one.

41

176. That BALLARD, taking advantage of his superior, indeed absolute monopoly over the information regarding the development of the joint venture partnership's objective; to wit: the *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology, became an established and well known fiduciary of DOUKAS.

177. That, in reliance on BALLARD's promises, DOUKAS entrusted money and goods to BALLARD.

178. That BALLARD, employing the disparity in knowledge he worked hard to create and ultimately protect, exploited the advantage he had over DOUKAS.

179. That BALLARD, also the partner in control of the day to day operations of the *Doukas/Ballard joint venture* partnership, controlled how DOUKAS dispersed his investment/good faith capital and earnest money.

180. That because BALLARD was in exclusive control over how DOUKAS' joint venture money was expended, BALLARD was a fiduciary of DOUKAS who diverted funds away from his fiduciary in order to self deal.

181. Specifically, BALLARD breached the fiduciary obligation he owed DOUKAS when he diverted DOUKAS' and the joint venture partnership's money in order to file a patent on technology owned, developed, engineered, originated, invented and created by the *Doukas/Ballard joint venture* and entrusted to BALLARD by DOUKAS in the course of a fiduciary relationship and in reliance upon the fiduciary obligations BALLARD owed and promised to DOUKAS.

182. That by virtue of the fact that the pride of ownership, the benefits of ownership and actual ownership cannot be recompensed with money damages, DOUKAS and the other Plaintiffs seek equitable remedies to satisfy their

42

demands and demand the imposition of a constructive trust over the

*Doukas/Ballard joint venture* technology and all past and future proceeds

generated by its existence.

### As and For a Fourth Cause of Action
(All Defendants-Breach of Contract/Unjust Enrichment)

183.    Plaintiffs restate, re-allege and show paragraphs "1" through "182"

as is fully set forth herein.

184.    That there existed between Plaintiffs and Defendants a joint

venture agreement that is enforceable as a matter of law inasmuch as:

(i)     DOUKAS and BALLARD, after negotiating terms beginning in 1994, formed a contract with each other in early February, 1995.

(ii)    The object of the contract was to create, develop, invent, originate, develop, market, patent, employ, sell, own and engineer *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.

(iii)   Each party to the contract (and their assignees) was voluntarily bound by the contract and each paid and exchanged consideration for the promises of the other.

(iv)    The contract was breached by BALLARD, the other Defendants and their assigns as is fully set forth elsewhere in this complaint.

(v)     That there was a clear understanding of unequivocal terms insofar as how the profits and losses of the *Doukas/Ballard joint venture* were to be distributed.

(vi)    DOUKAS fully performed under the contract and oral joint venture agreement he made with BALLARD.

185.    That BALLARD breached the clear understanding and trust he

engendered when promising DOUKAS and inducing him to believe he was a

trustworthy partner when BALLARD converted, stole, diverted, transferred,

hypothecated and otherwise removed from the joint venture and his fiduciary,

TED DOUKAS the technology created, developed, invented, originated,

43

engineered and brought into existence with DOUKAS' money which was given to

BALLARD under the auspices of the joint venture.

186.   That as the result of the foregoing, BALLARD and his assigns,

including all named Defendants, breached their contract with DOUKAS and have

been unjustly enriched by their breach in an amount not less than

$5,000,000,000.00 (FIVE BILLION DOLLARS).

### As and For a Fifth Cause of Action
(Fraud in the Inducement)

187.   Plaintiffs restate, re-allege and show paragraphs "1" through "186"

as is fully set forth herein.

188.   In August, 1997 BALLARD, at the expense of the joint venture

partnership and fiduciary duty he owed DOUKAS, knowingly, intentionally and

maliciously defrauded DOUKAS when, behind his joint venture partner and

fiduciary's back, BALLARD stole, transferred, converted, hypothecated, spirited

away and otherwise diverted the technology away from the *Doukas/Ballard joint*

*venture* and did so without DOUKAS' knowledge, consent or approval.

189.   That Defendants, either alone or acting in concert with each other,

defrauded DOUKAS of his rightful ownership interest in the technology

developed over the course of the joint venture and acting alone or in concert with

one another, stole, hijacked, concealed and wrongfully usurped DOUKAS'

interest in the technology and with the intent of wrongfully depriving DOUKAS

and SYNGEN DATA SERVICES the benefit of ownership in the technology and

the resulting patent surreptitiously obtained by BALLARD and assigned to DTC.

These acts served to defraud DOUKAS and SYNGEN DATA SERVICES out of

$5,000,000,000.00 (FIVE BILLION DOLLARS).

44

190.    That as a result of the fraudulent conduct described herein DOUKAS has been deprived the beneficial rights inherent in the ownership of the technology crated, engineered and developed with joint venture assets during the time the joint venture was still in existence which cannot be remedied by monetary damages alone.

191.    That BALLARD lied and misrepresented his true intentions *vis a vis* ever fulfilling the promises he made to DOUKAS that when prompted, caused and lured DOUKAS into becoming BALLARD's joint venture partner.

192.    As product of Defendants' fraud upon Plaintiffs, Plaintiffs are entitled to a judgment in the amount of $5,000,000,000.00, (FIVE BILLION DOLLARS), together with treble, punitive and consequential damages in an amount to be determined at trial but no less than TEN BILLION DOLLARS ($10,000,000,000.00).

### As and For a Sixth Cause of Action
(Common Law Accounting)

193.    Plaintiffs restate, re-allege and show paragraphs "1" through "192" as is fully set forth herein.

194.    That there existed a joint venture partnership between DOUKAS and BALLARD.

195.    That the goal of the joint venture was to develop "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology.

196.    That during the relevant time period (1994-1997) the *Doukas/Ballard joint venture* succeeded in developing technology.

197.    That BALLARD secreted, stole, transferred, hypothecated, hid, dissipated and otherwise removed the technology from joint ownership to himself

45

in contravention of the stated goals and objectives of the *Doukas/Ballard joint venture*.

198.    That BALLARD, by fraudulent means, trickery and deceit, wrongfully assigned, transferred, sold or encumbered the technology created, developed and engineered by the joint venture with joint venture assets.

199.    That BALLARD, by fraudulent means, assigned or otherwise transferred the technology to DTC.

200.    That by reason of the foregoing, BALLARD, DTC and the other Defendants all owe to DOUKAS and the other Plaintiffs an accounting of all monies received by virtue of the joint venture's technology.

201.    That by reason of the foregoing, Defendants BALLARD, LANE, DELUCIA and DTC owe to Plaintiff DOUKAS an accounting of all money, proceeds and things of value generated or caused to exist by virtue of the *Doukas/Ballard* technology and the *Doukas/Ballard joint venture*.

202.    That as a result of the assignment of the joint venture technology surreptitiously converted by BALLARD to his own, Defendant DTC has no more rights than did BALLARD and, as a result thereof, DTC is accountable to DOUKAS for all profits, proceeds, monies and things of value, whether tangible or intangible, flowing from ownership, use and enjoyment of the *Doukas/Ballard* technology as reflected in the patent filed by BALLARD under his own name at a time when BALLARD was operating at the largess of the *Doukas/Ballard joint venture* and from DOUKAS' office building as admitted by BALLARD under oath.

## As and For a Seventh Cause of Action
(Dissolution, Partnership Law)

203. Plaintiffs restate, re-allege and show paragraphs "1" through "202" as is fully set forth herein.

204. That there existed a partnership between DOUKAS and BALLARD.

205. That BALLARD has willfully and persistently committed a breach of the partnership agreement or otherwise conducted himself in a manner relating to the partnership business that makes it impracticable to carry on the partnership.

206. That the circumstances stated herein have otherwise rendered dissolution of the partnership equitable.

207. That given the outright breach of the joint venture partnership agreement by BALLARD, DOUKAS is entitled to a declaration dissolving the partnership.

208. That inherent in the dissolution of the *Doukas/Ballard joint venture* partnership, DTC, the assignee and alter-ego of BALLARD, should also be dissolved and its assets distributed to DOUKAS.

209. That as a result of BALLARD's wrongfully causing a dissolution of the partnership, DOUKAS is entitled to the partnership property to discharge any debts he incurred as a result of carrying out the partnership and to be paid out the surplus in the property of the partnership, namely the value of the technology created by the partnership.

210. That as a result of BALLARD's wrongful acts, DOUKAS is entitled to the damages caused by BALLARD's breach of the partnership agreement.

47

211.    That as a result of BALLARD's wrongful breach of the

*Doukas/Ballard joint venture* partnership, DOUKAS demands dissolution of the

*Doukas/Ballard joint venture* partnership, unwinding of the partnership,

appointment of a receiver to oversee said dissolution and an accounting of the

assets of the partnership along with distribution of the partnership assets in an

amount to be determined by this Court, but in no event less than FIVE BILLION

DOLLARS ($5,000,000,000.00).

### As and For an Eighth Cause of Action
(Imposition of a Constructive Trust on 50%
of DTC Shares and 100% of All Profits)

212.    Plaintiffs restate, re-allege and show paragraphs "1" through "211"

as is fully set forth herein.

213.    In this case there exists a constructive trust enuring to the benefit

of DOUKAS that reaches to the technology developed by the joint venture as

reflected in the wrongfully filed patent application dated August 27, 1997.

(Exhibit "A").

214.    That supporting the existence of a constructive trust are the

following factual predicates:

(i)     CLAUDIO BALLARD was a fiduciary to DOUKAS based upon BALLARD's superior knowledge and experience as a self proclaimed "*computer scientist*", "*inventor*" and "*technology wizard*".

(ii)    CLAUDIO BALLARD had absolute control over the day to day operations of the joint venture insofar as overseeing the development of the sought after "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology.

(iii)   CLAUDIO BALLARD had absolute control over the development of the *Doukas/Ballard* technology and had distinct and palpable advantage over DOUKAS *vis a vis* the progress of the *Doukas/Ballard joint venture*.

48

(iv)   CLAUDIO BALLARD, as DOUKAS' joint venture partner and fiduciary, promised that all technology developed during the joint venture's existence would be owned by the joint venture partners; to wit: TED DOUKAS and CLAUDIO BALLARD.

(v)   That CLAUDIO BALLARD, in furtherance of his conspiracy, made DOUKAS promise all goings on at 535 Broadhollow Road would be a secret between them in order to protect against corporate sabotage and piracy.

(vi)   That based upon the confidential/fiduciary relationship that existed between DOUKAS and BALLARD, DOUKAS gave money to BALLARD in exchange for BALLARD's promise that all technology developed during the life of the joint venture would be owned by the joint venture.

(vii)   That BALLARD breached the terms of the joint venture partnership and the fiduciary duty he owed to DOUKAS by failing to include DOUKAS on the August 27, 1997 patent application.

(viii)   That BALLARD has been unjustly enriched by his devious, deceptive and outright breach of the joint venture partnership agreement and the fiduciary obligation he owed to DOUKAS.

215.   That in reliance upon BALLARD's words and promises, DOUKAS poured $600,000.00 toward the success of the joint venture that existed between the two.

216.   CLAUDIO BALLARD, in direct contravention of the explicit and unequivocal promises he made to DOUKAS *vis a vis* "*all technology*" being owned and controlled by the joint venture partners, stole, hypothecated, transferred, dissipated, converted, co-opted, usurped and otherwise removed the *Doukas/Ballard* technology by filing a patent application that failed to include DOUKAS as an owner, inventor or assignee.

217.   That as a product of the foregoing, CLAUDIO BALLARD, DTC, SHEPHARD LANE, KEITH DELUCIA and other named Defendants have been unjustly enriched in an amount to be determined at trial but no less than FIVE BILLION DOLLARS ($5,000,000,000.00).

49

218. That by reason of the foregoing, there should be a constructive trust imposed upon all profits, monies and things of value generated by the existence of the *Doukas/Ballard* technology.

219. That DTC, BALLARD, LANE and DELUCIA, as assignees of DOUKAS' interest, should be declared constructive trustees of DOUKAS' 50% ownership of the technology and 100% of all profits, monies and things of value that were generated by the existence of the *Doukas/Ballard* technology as reflected in the patent fraudulently and surreptitiously filed by BALLARD in his own name at a time when he owed a duty of loyalty and a fiduciary duty to DOUKAS.

220. That Defendants DTC, BALLARD, LANE and DELUCIA and JOHN AND JANE DOES "1" through "750" should be held as constructive trustees of DOUKAS and all money already paid and that which may be owed in the future should be held in trust for the benefit of DOUKAS and further, all banks named herein and those identified as unknown corporate and banking institutions "1" through "75" are also constructive trustees of Doukas.

### As and For an Ninth Cause of Action
(Dissolution of DTC)

221. Plaintiffs restate, re-allege and show paragraphs "1" through "220" as is fully set forth herein.

222. By virtue of this complaint DOUKAS asserts to be the owner of the technology created by the *Doukas/Ballard joint venture*.

223. DOUKAS further asserts by this complaint that DTC is the assignee of Plaintiffs' interest in the *Doukas/Ballard joint venture* technology.

224. That upon information and belief the *Doukas/Ballard* technology is the only verifiable asset of DTC.