225. That DTC wrongfully, knowingly and intentionally obtained ownership of the *Doukas/Ballard* technology as reflected in the patent filed by BALLARD behind his joint venture partner's back and in violation of the fiduciary duty BALLARD owed to DOUKAS.

226. That DTC knew and understood that BALLARD did not lawfully, equitably or rightfully own the *Doukas/Ballard* technology.

227. That DTC, with knowledge of DOUKAS' rights to own and profit from the development of the *Doukas/Ballard "elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology stole, converted, schemed, defrauded, connived and purloined the *Doukas/Ballard joint venture* technology.

228. That upon information and belief, CLAUDIO BALLARD was installed as President of DTC.

229. That as an officer and director of DTC, CLAUDIO BALLARD knowingly defrauded DOUKAS.

230. That as a result of BALLARD's fiduciary obligation he owed to DOUKAS by virtue of the *Doukas/Ballard joint venture*, BALLARD implicated all DTC shares sold to shareholders and those given to various officers and directors.

231. That DTC is a corrupt organization whose singular and sole profit generating asset is the stolen and otherwise purloined *Doukas/Ballard joint venture "elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.

232. That SHEPHARD LANE knew in advance of BALLARD's assignment of the *Doukas/Ballard joint venture* technology to DTC that DOUKAS was the rightful owner.

51

233. That KEITH DELUCIA knew in advance of BALLARD's assignment of the *Doukas/Ballard joint venture* technology to DTC that DOUKAS was the rightful owner.

234. That as a result of the foregoing, DOUKAS is the beneficial and equitable owner of one-half of all outstanding shares in DTC.

235. That the interests between DOUKAS, BALLARD, LANE, DELUCIA and the remaining shareholders in DTC are so divided that dissolution would be beneficial to the shareholders of DTC, particularly in light of the frauds committed herein by BALLARD, LANE, DELUCIA and DTC.

236. That by reason of the foregoing, DOUKAS and the other Plaintiffs demand a final order of judgment dissolving DTC and ordering the sale of the *Doukas/Ballard joint venture technology* and ordering DTC to account to DOUKAS for 100% of all profits and remaining assets in DTC, including an accounting of all legal fees paid by DTC to Defendant HAROLD NIX and NIX PATTERSON & ROACH, LLP.

### As and For a Tenth Cause of Action
(Common Law Dissolution and Accounting)

237. Plaintiffs restate, re-allege and show paragraphs "1" through "236" as is fully set forth herein.

238. Plaintiffs assert that an enforceable joint venture agreement existed between TED DOUKAS and CLAUDIO BALLARD.

239. Plaintiffs further asset that CLAUDIO BALLARD was a fiduciary to DOUKAS.

240. Plaintiffs further assert that by fraud and deceit BALLARD breached the terms, conditions, understanding and mutual agreements that comprised the *Doukas/Ballard joint venture*.

52

241.    That because of BALLARD's breach of the *Doukas/Ballard joint venture* agreement there is an accounting owed to DOUKAS and that the *Doukas/Ballard joint venture* should be wound up or otherwise dissolved.

242.    That by virtue of the *Doukas/Ballard joint venture* dissolution, the affairs of DTC must all be dissolved inasmuch as DTC wrongfully stands in the shoes of DOUKAS.

### As and For a Eleventh Cause of Action
(Replevin)

243.    Plaintiffs restate, re-allege and show paragraphs "1" through "242" as is fully set forth herein.

244.    Plaintiffs in this case assert the technology at the center of the dispute to be a unique chattel.

245.    Technology is a "*thing*" in existence as testified to by CLAUDIO BALLARD in his affidavit of January 30, 2006.

246.    That BALLARD wrongfully, surreptitiously, intentionally and without his joint venture partner's knowledge or consent, removed the prototype and other valuable things and unique chattels properly owned by the joint venture partnership.

247.    As a result of the foregoing Plaintiffs demand a judgment ordering BALLARD and his assigns and/or co-conspirators to return these unique chattels.

### As and For an Twelfth Cause of Action
(Conversion)

248.    Plaintiffs restate, re-allege and show paragraphs "1" through "247" as is fully set forth herein.

249.    That DTC, BALLARD, LANE, DELUCIA, LUPOLI, HAROLD NIX and NIX PATTERSON & ROACH, LLP intentionally and without authority assumed control over the *Doukas/Ballard joint venture*'s technology, as described

53

herein, and fraudulently filed to patent the technology created pursuant to the *Doukas/Ballard joint venture* agreement as their own.

250.    That by assuming control over the *Doukas/Ballard joint venture*'s technology, DTC, BALLARD, LANE and DELUCIA received monetary gain that otherwise belonged to DOUKAS and/or the *Doukas/Ballard joint venture*.

251.    That as a result of DTC and its lawyers, together with BALLARD, LANE, DELUCIA and LUPOLI intentionally assuming control over the *Doukas/Ballard joint venture*'s technology without DOUKAS' authority, DOUKAS has been damaged in an amount no less than FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages of TEN BILLION DOLLARS ($10,000,000,000.00).

**As and For a Thirteenth Cause of Action**
(Aiding and Abetting in a Conversion)

252.    Plaintiffs restate, re-allege and show paragraphs "1" through "251" as is fully set forth herein.

253.    That the Defendants had actual knowledge of Defendants, DTC, HAROLD NIX, NIX PATTERSON & ROACH, LLP, BALLARD, LANE, DELUCIA and LUPOLIs' conversion of DOUKAS' interest in the *Doukas/Ballard joint venture*'s technology.

254.    That said actual knowledge is exemplified in the fraud prevalent throughout the BALLARD's patenting of the *Doukas/Ballard joint venture*'s technology, BALLARD's sudden departure from DOUKAS' facilities provided for the purpose of developing the *Doukas/Ballard joint venture*'s technology, the fraudulent transfer of said patent to CSP HOLDINGS INC. and later fraudulent transfer to DTC, Defendants' knowledge of BALLARD's dire financial situation that necessitated BALLARD's obtaining funding from DOUKAS to develop the

54

*Doukas/Ballard joint venture's* technology, DTC's suddenly pulling its headquarters and operations from Long Island, New York to Plano, Texas, and DTC's and the Defendant banks' secreting of their settlement agreements to keep them from becoming public knowledge.

255.    That the Defendants further committed such acts aiding and abetting BALLARD in converting DOUKAS' interest in the *Doukas/Ballard joint venture* technology.

256.    That as a result of the foregoing, DOUKAS has been damaged in an amount to be determined by this Court, but in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00) together with punitive, treble, exemplary and consequential damages of an amount to be determined by this Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

### As and For a Fourteenth Cause of Action
(Receivership – CPLR Article 64)

257.    Plaintiffs restate, re-allege and show paragraphs "1" through "256" as is fully set forth herein.

258.    Plaintiffs, given the underlying facts and allegations, seek to invoke CPLR Article 62 and beg the Court to appoint a Receiver.

259.    That the appointment of a temporary Receiver is absolutely necessary in order to preserve DOUKAS' rights, property and entitlement during the course of this litigation.

260.    Plaintiffs assert that specific property is subject to dissipation and that perhaps billions of dollars have already been dissipated, secreted and stolen by Defendants in furtherance of their conspiracy to defraud Plaintiffs.

261.    That for going on 14 years, Defendants have worked hard in order to keep Plaintiffs' entitlements a secret and to continue on with the scheme to

55

deprive Plaintiffs of their money and proceeds which, in this case, amounts to BILLIONS of dollars.

262. The specific and identifiable property interests are as follows:

(i) The patent reflecting the "*elusive biometric character recognition* and "*remote image capture and centralized storage*" technology as was created during the joint venture.

(ii) All money paid by "*end users*" of the *Doukas/Ballard* technology.

(iii) All settlement and licensing agreements wherein "*end users*" and licensees are obligated to pay money for the future use of the *Doukas/Ballard* "*elusive biometric character recognition* and "*remote image capture and centralized storage*" technology as is reflected in the August 27, 1997 patent application fraudulently filed by BALLARD.

263. That given the unique benefits of ownership of a patent, money alone will not suffice.

264. That because Plaintiffs are seeking equitable remedies and declaratory judgment, Receivership is authorized.

265. That because BALLARD was and remains a fiduciary of DOUKAS, Receivership is an authorized remedy.

266. That because Plaintiffs allege such things as, (and seek the remedies of), an accounting, constructive trust, equitable trust, breach of fiduciary duties, the equitable and statutory remedy of Receivership is authorized.

### As and For a Fifteenth Cause of Action
(Attachment – CPLR Article 62)

267. Plaintiffs restate, re-allege and show paragraphs "1" through "266" as is fully set forth herein.

268. The entirety of this Complaint bespeaks a well planned, diabolical and pervasive fraud that continues to this very day.

56

269.   In this Complaint, Plaintiffs not only complain about a past act of treachery and deceit but that this sinister behavior is ongoing to the extent that a warrant of attachment is in order.

270.   In asserting its cause of action for CPLR Article 62 relief, Plaintiffs assert the following as providing sufficient cause for this drastic provisional remedy: Defendants have defrauded DOUKAS of his interest in the *Doukas/Ballard joint venture*, in furthering its fraud against DOUKAS, Defendants, BALLARD, LANE and DELUCIA moved DTC's headquarters and operations out of Long Island, New York and into Plano, Texas.

271.   There is a need for security.

(i)   Defendant has removed its operations and headquarters without the state in an attempt to continue defrauding DOUKAS of his interest in the *Doukas/Ballard joint venture* technology;

(ii)   Defendants are either non domiciliaries residing without the State of New York and/or foreign corporations not authorized to do business in the State of New York;

(iii)   Plaintiffs are seeking a judgment against the Defendants for FIVE BILLION DOLLARS ($5,000,000,000.00) plus exemplary and punitive damages in the amount of TEN BILLION DOLLARS ($10,000,000,000.00);

(iv)  Defendant, BALLARD, after patenting the *Doukas/Ballard joint venture* technology, fraudulently transferred the patent first to CSP HOLDINGS INC., then to DTC;

(v)   Defendants, specifically DTC, LANE, BALLARD and DELUCIA have engaged in serious misconduct aimed at frustrating the enforcement of a judgment that might be rendered and have secreted, encumbered, dissipated, assigned and disposed of property and moved it from this State;

(vi)  Defendant DTC is distributing a certain portion of its proceeds from the *Doukas/Ballard joint venture* technology to its shareholders, which, upon information and belief, due to fraudulent dilution of shares by BALLARD, LANE and DELUCIA, mainly benefit the Defendants herein, but no proceeds whatsoever have been accounted to or turned over to DOUKAS and the Plainitffs herein.

57

272.     By virtue of the foregoing, Plaintiffs are demand judgment ordering an attachment of DTC's property within the State, namely: any and all proceeds created by any licensing agreements for use of the *Doukas/Ballard joint venture* technology any and all payouts, proceeds, profits and/or other monies paid pursuant to any settlement agreements between any Defendant corporate entities located within the State and any and all other property interests or proceeds passed through or located within the State, including any and all bank accounts maintained by any financial institutions located within the State of New York and any payments made by the Defendant banks located within the State of New York.

### As and For a Sixteenth Cause of Action
(Injunctive Relief/Preliminary Injunction CPLR Article 63)

273.     Plaintiffs restate, re-allege and show paragraphs "1" through "272" as is fully set forth herein.

274.     That Defendants are and will continue to dissipate the proceeds received from enforcement of the patent on the *Doukas/Ballard joint venture* technology and dilute the value of the technology, proceeds and value which, by virtue of the facts alleged herein, belong to DOUKAS.

275.     That in the absence of an injunction, DOUKAS will continue to suffer irreparable harm in that the benefits and pride of ownership of a technology cannot be remedied at law and the benefits and pride of ownership from the *Doukas/Ballard joint venture* technology will be diluted and dissipated among the Defendants who acted to defraud DOUKAS out of his interest in the *Doukas/Ballard joint venture* technology along with the remaining shareholders of DTC.

58

276.   That based on the foregoing, Defendant has a likelihood of success on the merits.

277.   That the balancing of the equities falls in favor of a restraining order as Defendants have engaged in trickery, treachery and deceit against DOUKAS and the Plaintiffs and DOUKAS and the plaintiffs stand as an innocent party in this litigation who has been defrauded by Defendants.

278.   That as a result of the foregoing, Plaintiffs demand a preliminary injunction enjoining the Defendants from dissipating the proceeds and/or profits obtained through enforcement of the patent and the Plaintiffs' interest in the *Doukas/Ballard joint venture* technology.

### As and For a Seventeenth Cause of Action
(Tortious Interference)

279.   Plaintiffs restate, re-allege and show paragraphs "1" through "278" as is fully set forth herein.

280.   Plaintiffs claim that Defendants tortiously interfered with the contractual rights that existed between Plaintiffs and Defendants.

281.   That there existed a valid and enforceable joint venture agreement between DOUKAS and BALLARD *vis a vis* the development, ownership and control of *"elusive biometric character recognition"* and *"remote image capture and centralized storage"* technology.

282.   That the *Doukas/Ballard joint venture* existed from February 9, 1995 until BALLARD breached said agreement on August 27, 1997 when behind his joint venture partner's back and in violation of the fiduciary obligation BALLARD owed to DOUKAS, BALLARD filed a patent application that failed to include DOUKAS.

59

283. That the technology covered by and reflected in the patent application filed by BALLARD was the product of the *Doukas/Ballard joint venture*.

284. That all Defendants, specifically LANE, DELUCIA, LUPOLI, HAROLD NIX, NIX PATTERSON & ROACH, LLP and DTC as assignees of BALLARD and DOUKAS knew of the joint venture agreement and intentionally scuttled, blocked, impeded and impaired DOUKAS' rights as they existed under the joint venture.

285. That Defendants DTC, HAROLD NIX, NIX PATTERSON & ROACH, LLP, DELUCIA, LANE and LUPOLI importuned, cajoled and procured BALLARD's breach of the joint venture agreement that existed between DOUKAS and BALLARD and did so intentionally, maliciously and with wanton and utter disregard for DOUKAS' rights, entitlements and interests as they existed under the *Doukas/Ballard joint venture.*

286. That as a result of the actions referred to herein, DOUKAS and the other Plaintiffs were damaged.

287. That the damages sustained by Plaintiffs exceed FIVE BILLION DOLLARS ($5,000,000,000.00).

288. That Defendants intentionally procured the breach of the *Doukas/Ballard joint venture* with the intent to defraud and swindle DOUKAS out of his rightful joint venture ownership of the *Doukas/Ballard* technology.

289. The actions of LUPOLI, LANE, DELUCIA, HAROLD NIX, NIX PATTERSON & ROACH, LLP and DTC were malicious and engaged in with the specific intent of interfering with DOUKAS' rights to ownership of the *Doukas/Ballard* technology and his rights, benefits, ownership and interest in the *Doukas/Ballard joint venture.*

60

290.   This cause of action asserts that Peter LUPOLI, DTC, HAROLD

NIX, NIX PATTERSON & ROACH, LLP, KEITH DELUCIA (and his aliases),

together with SHEPHARD LANE and others yet unknown to Plaintiffs, actively

importuned, promoted, interfered, impaired and impeded DOUKAS' contractual

rights as they existed under the *Doukas/Ballard joint venture* agreement.

291.   Lastly, none of the parties to the *Doukas/Ballard joint venture*

agreement are named as a party to this cause of action and it is limited to DTC,

HAROLD NIX, NIX PATTERSON & ROACH, LLP, LANE, DELUCIA,

LUPOLI and others who remain unknown to Plaintiffs and DOUKAS.

292.   By virtue of the foregoing, Plaintiff TED DOUKAS is entitled to

and demands judgment against the responsible Defendants in the amount of FIVE

BILLION DOLLARS ($5,000,000,000.00) together with punitive, treble,

exemplary and consequential damages of an amount to be determined by this

Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

### As and For a Eighteenth Cause of Action
(Constructive Fraud: All Defendants)

293.   Plaintiffs restate, re-allege and show paragraphs "1" through "292"

as is fully set forth herein.

294.   That there existed a joint venture agreement and partnership

between DOUKAS and BALLARD as is described elsewhere herein.

295.   That BALLARD represented, promised, lured and tricked

DOUKAS into believing that if he invested money and office space, all

technology would be shared, owned and controlled by the joint venture.

296.   That relying upon BALLARD's intentionally misleading and false

promises, DOUKAS invested money.

61

297.   That BALLARD, by virtue of the joint venture partnership and the

fiduciary duty he owed to DOUKAS, had a duty to disclose to DOUKAS that

technology had been created under the auspices of the joint venture and with joint

venture funds.

298.   That with the intent to defraud DOUKAS, BALLARD concealed

the information regarding the success of the joint venture in developing *"elusive*

*biometric character recognition"* and *"remote image capture and centralized*

*storage"* technology.

299.   That with the intent to defraud DOUKAS, BALLARD concealed

all information regarding the filing of a patent application that reflected the

technology developed by the joint venture.

300.   That BALLARD, by virtue of the existence of a joint venture

agreement with DOUKAS and the fiduciary obligations BALLARD owed to

DOUKAS, BALLARD was duty bound to be honest, candid and forthright *vis a*

*vis* disclosure of these facts to DOUKAS.

301.   That as a result of the foregoing Plaintiff TED DOUKAS is

entitled to and demands judgment against the responsible Defendants in the

amount of FIVE BILLION DOLLARS ($5,000,000,000.00) together with

punitive, treble, exemplary and consequential damages of an amount to be

determined by this Court, but in no event less than TEN BILLION DOLLARS

($10,000,000,000.00).

### As and For an Nineteenth Cause of Action
(Breach of Implied Covenant of Good Faith and Fair Dealing – All Defendants)

302.   Plaintiffs restate, re-allege and show paragraphs "1" through "301"

as is fully set forth herein.

62

303.   CLAUDIO BALLARD, as a joint venture partner and fiduciary of DOUKAS was bound to DOUKAS by an implied covenant of good faith and fair dealing.

304.   That there was an enforceable joint venture agreement that existed between DOUKAS and BALLARD that was limited to the development of "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology.

305.   That the parties (DOUKAS and BALLARD) had a clear, explicit and unequivocal understanding *vis a vis* the scope of the joint venture which was to develop and own "*elusive biometric character recognition*" and "*remote image capture and centralized storage*" technology.

306.   That there was a clear and unmistakable agreement *vis a vis* how the losses and profits were to be distributed amongst the parties; to wit: a 50%-50% division.

307.   That DOUKAS, based upon the joint venture agreement he made with BALLARD, fully performed his joint venture obligations by providing free office space and development capital and the joint venture.

308.   That DOUKAS, relying on BALLARD's promises, representations and statements, contributed money toward the success of the joint venture.

309.   That BALLARD was in total control of all aspects of development of the *Doukas/Ballard* technology and how partnership funds were expended.

310.   That BALLARD made DOUKAS take an oath of secrecy surrounding the joint venture's invention, development efforts, goals and objections in order to protect against corporate sabotage and piracy.

311.   That BALLARD breached his joint venture contract with DOUKAS by converting, stealing and subverting the joint venture partnership

63

when he (BALLARD) filed a patent application that embodied the joint venture partnership's technology in his own name and intentionally excluded his joint venture partner.

312. That by reason of the foregoing, BALLARD breached the implied covenant of good faith and fair dealing he owed to his fiduciary and joint venture partner, TED DOUKAS.

313.. That at the time BALLARD entered into his joint venture agreement with DOUKAS, it was expected and expressly represented that both men would deal honestly and in good faith with each other.

314. That at the time the joint venture was formed, DOUKAS, relying on BALLARD's outwardly sincere promises of loyalty, invested almost $900,000.00 into the joint venture.

315. That DOUKAS, by BALLARD's promises of loyalty, was led to believe and expected that all technology developed from the spring of 1995 to August 1997 would be the property of and owned by the *Doukas/Ballard joint venture*.

316. It was never contemplated by the joint venture that BALLARD could steal, convert or spirit away the technology developed during the existence of the joint venture.

317. By reason of the foregoing, BALLARD and his assignees have breached the implied covenant of good faith and fair dealing they owed to DOUKAS.

318. That as a result of the foregoing Plaintiff TED DOUKAS is entitled to and demands judgment against the responsible Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00) together with punitive, treble, exemplary and consequential damages of an amount to be

64

determined by this Court, but in no event less than TEN BILLION DOLLARS
($10,000,000,000.00).

### As and For a Twentieth Cause of Action
(Breach of Fiduciary Duty)

319.   Plaintiffs restate, re-allege and show paragraphs "1" through
"318" as is fully set forth herein.

320.   Defendant, BALLARD and his assigns had a fiduciary duty to
Plaintiff, DOUKAS as a trusted advisor, confidant, computer expert, and joint
venture partner.

321.   BALLARD had a duty to DOUKAS to act in his best interest, and
BALLARD owed him unqualified loyalty and was not permitted to act in a
manner contrary to DOUKAS' interests.

322.   BALLARD was required to make truthful and complete
disclosures about his dealings with DOUKAS, failed to act in DOUKAS' best
interest, BALLARD failed to act with unqualified loyalty, BALLARD acted
contrary to DOUKAS' best interests and did not make truthful and complete
disclosures about his dealings with DOUKAS and gained unconscionable
advantage at DOUKAS' expense, as a result of his fraudulent and nefarious
actions.

323.   As a result of the breach of fiduciary duty on the part of
BALLARD, DOUKAS has been damaged in an amount to be determined by the
Court, but in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00)
together with punitive, treble, exemplary and consequential damages of TEN
BILLION DOLLARS ($10,000,000,000.00).

65

### As and For a Twenty-first Cause of Action
(Aiding and Abetting in Breach of Fiduciary Duty)

324.    Plaintiffs restate, re-allege and show paragraphs "1" through "323" as is fully set forth herein.

325.    As described herein, Defendants, DTC, DELUCIA, LANE, LUPOLIs and the Defendant Banks had actual knowledge of the *Doukas/Ballard joint venture* and BALLARD's fiduciary duty pursuant thereto.

326.    As described herein, Defendants, DTC, HAROLD NIX, NIX PATTERSON & ROACH, LLP, DELUCIA, LANE, LUPOLIs and the Defendant Banks assisted, aided and/or abetted BALLARD in breaching his fiduciary duty owed to DOUKAS all to benefit themselves at DOUKAS' expense.

327.    That as a result of Defendants, DTC, HAROLD NIX, NIX PATTERSON & ROACH, LLP, DELUCIA, LANE, LUPOLIs and the Defendant Banks assisting, aiding and/or abetting BALLARD in breaching his fiduciary duty owed to DOUKAS, DOUKAS has been damaged in an amount to be determined by the Court, but in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00) together with punitive, treble, exemplary and consequential damages of TEN BILLION DOLLARS ($10,000,000,000.00).

### As and For a Twenty-second Cause of Action
(Corporate Waste)

328.    Plaintiffs restate, re-allege and show paragraphs "1" through "327" as is fully set forth herein.

329.    That as set forth more fully above DOUKAS has an ownership interest and/or is a shareholder in DTC by operation of law.

330.    That Defendants, BALLARD, LUPOLI, LANE and DELUCIA are directors and/or officers in DTC.

66

331. That as set forth more fully above, Defendants, BALLARD, LUPOLI, LANE and DELUCIA acting as directors and/or officers in DTC defrauded its shareholders and/or owners, including DOUKAS.

332. That as set forth more fully above, Defendants, BALLARD, LUPOLI, LANE and DELUCIA as directors and/or officers in DTC have placed their own interest before those of the shareholders and/or owners, including DOUKAS, have breached their duties of due care and diligence, and have participated in self-dealing without any due regard for the interests of DTC's shareholders and/or owners.

333. That Defendants, BALLARD, LUPOLI, LANE and DELUCIA as directors and/or officers in DTC have used DTC as a short-term cash cow for their own interests, have failed to act with due diligence and care to the corporation's shareholders and/or owners, have failed to fully report to its shareholders and/or owners, have carelessly failed to fully pursue enforcement of the patent of the *Doukas/Ballard joint venture*'s technology as they failed to report to shareholders and/or owners such as Doukas, and have limited their enforcement efforts only to a select few entities in order to make quick profits for their own pockets before the true shareholders and/or owners of the *Doukas/Ballard joint venture*'s technology discovered BALLARD, LUPOLI, LANE and DELUCIAs' fraud.

334. That because BALLARD, LUPOLI, LANE and DELUCIA have participated in fraud, self-dealing, and have utterly and recklessly disregarded their obligation to act with due diligence and care, a demand upon them to act in accordance with the shareholder and/or owners' best interests in pursuing full enforcement of the *Doukas/Ballard joint venture*'s technology would be futile.

67

335.    That as a result of the foregoing, DTC, its shareholders and/or owners have been damaged in an amount to be determined by this honorable Court, but in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00).

## Causes of Action Specific to the Purported Agreement Dated February 9, 2010

### As and For an Twenty-third Cause of Action
(Rescission: Generally)

336.    Plaintiffs restate, re-allege and show paragraphs "1" through "335" as is fully set forth herein.

337.    On February 9, 2010 Plaintiff TED DOUKAS was tricked into signing an agreement that provided for the payment of $400,000.00 in exchange for his delivering over to Defendants a release from all claims that may have arisen under the auspices of the *Doukas/Ballard joint venture*.

338.    At the time the terms of this agreement were being negotiated and executed, Defendants had no intention of fulfilling their end of the bargain.

339.    As an expression of Defendants' fraudulent intent and failure to act in good faith, the check delivered to DOUKAS at the time of signing was a phony that could not be negotiated in any bank.

340.    During the time the February 9, 2010 agreement was being negotiated and executed, Defendants, as opposed to dealing in good faith with Plaintiffs, and hiding their true intentions *vis a vis* never actually performing under the agreement, were in actuality conspiring with corrupt members of the Nassau County District Attorney's office in order to conjure, contrive and fabricate a story that would ultimately lead to DOUKAS' arrest for actions surrounding the negotiation of the settlement agreement.

68

341.     That SHEPHARD LANE, Defendant and DTC's in-house counsel, actually hinted at the settlement conference that took place on January 26, 2010 that monies paid pursuant to agreement would never make its way to DOUKAS.

342.     That an indictment against DOUKAS, one engineered by Defendants and the corrupt officials at the Nassau County District Attorney's office, was summarily dismissed based upon the unlawful conduct of the Nassau District Attorney with said misconduct being sufficient for the Court to conclude that the "*integrity of the Grand Jury was impaired and prejudice to the accused*" was present.

343.     That because Defendants never intended to make a contract with DOUKAS that was going to be fulfilled and further, because Defendants never reached mutual assent and, given the obvious failure of consideration, the fraud upon which the agreement was based upon and Defendants' repudiation and breach of the contract, Plaintiffs are entitled to rescission in order to restore Plaintiffs to their *status quo ante*.

344.     That there is no adequate remedy at law inasmuch as since the making of the February 9, 2010 agreement, Plaintiff has learned that his claims were much more valuable than Defendant was willing to disclose and Defendants actually, intentionally and negligently misrepresented facts known to them but hidden from DOUKAS when luring DOUKAS into making the agreement.

345.     That the only remedy that will put Plaintiff back to the position he occupied before he fell victim to Defendants' skullduggery, fraud, deceit and corruption is rescission.

346.     That based upon the foregoing the agreement dated February 9, 2010 should be rescinded and otherwise declared a nullity and void *ab nitio* with Plaintiffs being restored to the *status quo ante* position.

### As and For a Twenty-fourth Cause of Action
(Rescission: Failure of Consideration)

347.    Plaintiffs restate, re-allege and show paragraphs "1" through "346" as is fully set forth herein.

348.    That the agreement made and entered on February 9, 2010 was based upon mutual promises and representations that could not be and were not fulfilled.

349.    That the mutual promises and representations that supported the agreement between the parties inasmuch as Plaintiff received little or nothing of value and certainly not what was promised.

350.    That because Defendants never intended on fulfilling the promises made pursuant to the agreement and actually gave Plaintiffs a fake, phony and worthless check at the time of execution, the consideration supporting this agreement failed.

351.    That based upon the foregoing, Plaintiff is entitled to and demands rescission of the February 9, 2010 agreement based upon a failure of consideration.

### As and For a Twenty-fifth Cause of Action
(Recission: Fraud in Making the Contract)

352.    Plaintiffs restate, re-allege and show paragraphs "1" through "351" as is fully set forth herein.

353.    On February 9, 2010 Plaintiffs were fraudulently induced in making the agreement by the actions, statements and misconduct of Defendants.

354.    That during all relevant times, Defendants, as opposed to dealing in good faith, were in actuality scheming to defraud Plaintiffs and did so with the help of a corrupt Nassau District Attorney's office.

70

355. That as opposed to forming the intent to pay as reflected in the contract, Defendants' true intention was to have Plaintiffs falsely accused and never intended to abide by the terms of the contract.

356. That given these facts, the representations made in the agreement *vis a vis* payment were part of a fraud Defendants were perpetrating against Plaintiffs.

357.. That the check delivered to Plaintiffs on February 9, 2010, which was purportedly made pursuant to the terms of the agreement was a phony and could never be negotiated in any bank.

358. That each and every representation made by Defendants to Plaintiffs about the good faith negotiations were a lie and based upon those manifest falsities, Plaintiff was fraudulently induced in making the agreement with Defendants.

359. That DOUKAS reasonably relied upon Defendants' false and misleading statements *vis a vis* their intent to fulfill and live by the terms of the agreement.

360. That based upon the foregoing, Plaintiff is entitled to and demands rescission of the February 9, 2010 agreement based upon the fraud perpetrated upon him by Defendants in arriving at the terms of the agreement and in the execution of same.

### As and For a Twenty-sixth Cause of Action
(Rescission: Repudiation)

361. Plaintiffs restate, re-allege and show paragraphs "1" through "360" as is fully set forth herein.

71

362. That pursuant to the terms of the agreement, Defendants were supposed to pay Plaintiffs $325,000.00 dollars with the first installment of $125,000.00 due at signing.

363. That on February 9, 2010 Defendants delivered to Plaintiff a phony check in the amount of $125,000.00 knowing that said check was a fraud and would never clear Plaintiff's bank.

364. That Defendants, while never really intending for the agreement to be fulfilled, repudiated the contract by failing to provide genuine funds.

365. That at no time have Defendants ever paid Plaintiffs as reflected under the provisions of the agreement.

366. That by virtue of the foregoing Plaintiffs are entitled to and demand rescission based upon repudiation of the contract.

### As and For a Twenty-seventh Cause of Action
(Rescission: Material Breach)

367. Plaintiffs restate, re-allege and show paragraphs "1" through "366" as is fully set forth herein.

368. That under the terms of the agreement Defendants were to pay Plaintiff $325,000.00 and have failed to do so.

369. That Defendants' willful, intentional and deliberate breach of the explicit terms of the agreement requires rescission inasmuch as Defendants' misconduct substantially defeated the purpose of the contract.

370. That premised upon Defendants' material breach, Plaintiffs demand rescission as a remedy.

### As and For a Twenty-eighth Cause of Action
(Recission: Overreaching)

371. Plaintiffs restate, re-allege and show paragraphs "1" through "370" as is fully set forth herein.

72

372.    That at all relevant times, Defendants maintained secrecy insofar as the nature of their fraud and the success of the *Doukas/Ballard joint venture* and that BALLARD, by filing a patent in his own name behind his good faith partner and fiduciary's back, continued with his fraud upon DOUKAS.

373.    That because BALLARD and the other Defendants were in a superior position and had all the information important in order for DOUKAS to make an informed decision, BALLARD and the other Defendants were overreaching in their negotiation with DOUKAS.

374.    That based upon the fraud engaged in by BALLARD and the other Defendants, DOUKAS did not have information he was owed and in the possession of BALLARD, a fiduciary to DOUKAS, BALLARD and the other Defendants engaged in improper overreaching in their dealings with DOUKAS.

375.    That based upon BALLARD's card the other Defendants' overreaching Plaintiffs are entitled to and demand the remedy of rescission.

### As and For a Twenty-ninth Cause of Action
(Rescission: Unjust Enrichment)

376.    Plaintiffs restate, re-allege and show paragraphs "1" through "375" as is fully set forth herein.

377.    That based upon Defendants' gross misconduct and fraud upon DOUKAS and the other named Plaintiffs in this complaint, Defendants have been unjustly enriched.

378.    That because of Defendants' scheming and fraud an agreement was made that delivered over to Defendant DOUKAS' interest in the *Doukas/Ballard* technology.

73

379. That because of Defendants' fraud and other serious misconduct, Defendant was enriched to the extent that billions of dollars properly owed to DOUKAS went to Defendants.

380. That DOUKAS was properly, legally and equitably entitled to the proceeds, profits and monies generated by the development of the *Doukas/Ballard* technology.

381. That BALLARD owed to DOUKAS a fiduciary duty that was breached by BALLARD beginning in early 1995 and, continuing to the present, BALLARD breached the fiduciary duty he owed to DOUKAS and wrongfully converted partnership assets behind DOUKAS' back.

382. That BALLARD wrongfully, intentionally, fraudulently and in breach of the partnership and fiduciary duties he owed to DOUKAS assigned DOUKAS' interest away to Defendants.

383. That as a result of the foregoing, Defendants have been unjustly enriched at Plaintiffs' expense.

384. That as a result of the foregoing, Plaintiffs demand judgment against the Defendants rescinding the contract based on unjust enrichment along with in an amount to be determined by the Court but in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00).

**As and For a Thirtieth Cause of Action**
(Rescission: Abandonment of Contract/Mutual Termination)

385. Plaintiffs restate, re-allege and show paragraphs "1" through "384" as is fully set forth herein.

386. That on February 9, 2010, DOUKAS and the other Plaintiffs were lured, tricked and deceived into making a contract with Defendants.

74

387. That Defendants never intended on fulfilling the terms of the contract and there was no intent on Defendants' behalf to make an enforceable contract.

388. That Defendants never possessed the requisite mental state to form a binding contract but rather, their intent was to generate a prop for corrupt members of the Nassau District Attorney's office.

389. That Defendants have never attempted to fulfill the terms of the contract.

390. That by the conduct surrounding formation of the contract and Defendants' conduct following execution of an agreement positively, unequivocally and unmistakably proves, demonstrates and shows Defendants' intent to rescind and otherwise cancel any relationship that may have been formed by the existence of the February 9, 2010 writing.

391. That by reason of all the foregoing Plaintiffs and Defendants have made their intentions well known to each other and seek an order and judgment declaring the contract abandoned.

392. That by reason of the foregoing Plaintiffs allege Defendants acquiesced in the termination and by its own manifest breach, has abandoned the contract.

393. That by reason of the foregoing Plaintiffs allege the contract is rescinded by abandonment.

### As and For a Thirty-first Cause of Action
(Negligent Misrepresentation)

394. Plaintiffs restate, re-allege and show paragraphs "1" through "393" as is fully set forth herein.

75

395.    That BALLARD was a fiduciary to DOUKAS insofar as the *Doukas/Ballard joint venture* and resulting technology was concerned.

396.    That BALLARD, when making the contract, falsely, intentionally and maliciously represented that the *Doukas/Ballard joint venture* failed to produce a valuable technology.

397.    That BALLARD knew Plaintiffs desired correct information about the success of the joint venture and its producing a technology worth billions of dollars.

398.    That DOUKAS intended to rely on the information given over by BALLARD and his lawyers, including SHEPHARD LANE.

399.    That DOUKAS reasonably relied on BALLARD's information when DOUKAS was lured, tricked and deceived into making the February 9, 2010 agreement with BALLARD.

400.    That because BALLARD owed DOUKAS a fiduciary duty, DOUKAS was reasonable to rely on BALLARD's representations as well as those made by LANE.

401.    That based on the foregoing, the agreement made February 9, 2010 should be vitiated, rescinded, declared a nullity and void *ab nitio*.

### As and For a Thirty-second Cause of Action
(Rescission by Unconscionability)

402.    Plaintiffs restate, re-allege and show paragraphs "1" through "401" as is fully set forth herein.

403.    That the agreement by its terms is properly rescinded as being unconscionable.

404.    That by operation of the facts wherein BALLARD, in direct violation of the fiduciary duty he owed to his good faith joint venture partner and

76

the superior knowledge he had and further, by virtue of his perpetration of a long-standing fraud, tricked, deceived and lured DOUKAS and the other Plaintiffs into making an unconscionable agreement.

405.    That by virtue of Defendants' breach and fraud, DOUKAS was swindled out of FIVE BILLION DOLLARS ($5,000,000,000.00).

406.    That the terms of the original agreement were the product of fraud and are so unreasonable that it should not be enforced and should be vitiated inasmuch as its terms are so shockingly one-sided that it disturbs the conscience of the community and should not be enforced and declared a nullity and void *ab nitio*.

### As and For a Thirty-third Cause of Action
(Rescission /Fraud in the Inducement)

407.    Plaintiffs restate, re-allege and show paragraphs "1" through "406" as is fully set forth herein.

408.    That on February 9, 2010 Plaintiffs and Defendants made an agreement and Defendants had a pre-conceived but undisclosed intention not to perform.

409.    By reason of the foregoing Defendants made a misrepresentation of a material existing fact which requires rescission of the agreement.

410.    That Plaintiffs reasonably relied on Plaintiffs' false and misleading representations *vis a vis* the intention to perform.

411.    That Defendants' undisclosed intention not to perform under the contract constitutes a fraud and upon Defendants' designed and well established intent not to perform *ab nitio* requires rescission and restoration of Plaintiff DOUKAS and his *status quo ante* position.

## As and For a Thirty-fourth Cause of Action
(Declaratory Judgment: Lack of Mutual Assent)

412.    Plaintiffs restate, re-allege and show paragraphs "1" through "411" as is fully set forth herein.

413.    That because the negotiating preparation and execution of the February 9, 2010 agreement was all a ruse engaged in by Defendants in order to have Plaintiffs falsely accused of a crime, there was no mutual assent *vis a vis* the formation of a mutually binding bilateral contract.

414.    That because Defendants never formed the requisite mental state to form a bilateral agreement, said agreement is, as a matter of law, unenforceable and, given the fact that Defendants never intended to perform or live up to its terms, it is void *ab nitio*.

415.    That by virtue of the foregoing, Plaintiffs are entitled to declaratory judgment holding that no contractual relationship ever existed between Plaintiffs and Defendants insofar as the February 9, 2010 agreement is concerned.

## As and For a Thirty-fifth Cause of Action
(Declaratory Judgment: The *Doukas/Ballard joint venture*)

416.    Plaintiffs restate, re-allege and show paragraphs "1" through "415" as is fully set forth herein.

417.    That DOUKAS and BALLARD, after negotiating from late 1994, formed a joint venture partnership in February of 1995.

418.    That from late 1994 until the formation of the joint venture, BALLARD enticed, lured and promised DOUKAS that he could develop *inter alia "elusive biometric character recognition", "remote image capture and centralized storage"* and other technology.

78

419.    That because there existed a clear and unequivocal agreement between DOUKAS and BALLARD and that each understood how the profits and losses were to be shared and further, that DOUKAS fully performed as expected under the terms of the joint venture agreement, an enforceable joint venture existed between DOUKAS and BALLARD.

420.    That based upon the foregoing, DOUKAS demands declaratory judgment establishing the existence of the *Doukas/Ballard joint venture* and further, that the object of the joint venture was the *"elusive biometric character recognition"*, *"remote image capture and centralized storage"* and other technology reflected in the patent application dated August 27, 1997.

**As and For a Thirty-sixth Cause of Action**
(Declaratory Judgment: The *Doukas/Ballard* Fiduciary Relationship)

421.    Plaintiffs restate, re-allege and show paragraphs "1" through "420" as is fully set forth herein.

422.    That because there existed a joint venture partnership relationship between DOUKAS and BALLARD wherein BALLARD was in virtual, total control of the development of the technology contemplated by the formation of the joint venture partnership, BALLARD owed to DOUKAS a fiduciary obligation and duty.

423.    That because BALLARD was in absolute and utter control of the *"day to day operations"* of the joint venture, BALLARD, being in such a superior position and the partner withholding disparate information, was a fiduciary of DOUKAS and owed him all the duties and obligations of a fiduciary.

424.    That based upon statements made by BALLARD to DOUKAS, DOUKAS was led to believe that absolute secrecy was needed in order to protect the joint venture.

79

425.    By virtue of the foregoing, DOUKAS seeks declaratory judgment against BALLARD *vis a vis* BALLARD owing to DOUKAS all the duties and obligations of a fiduciary.

### As and For a Thirty-seventh Cause of Action
(Declaratory Judgment Against DTC)

426.    Plaintiffs restate, re-allege and show paragraphs "1" through "425" as is fully set forth herein.

427.    That BALLARD deceptively assigned the *Doukas/Ballard* technology to an entity commonly referred to as CSP HOLDINGS INC.

428.    That BALLARD, in order to cover his tracks, thereafter assigned the *Doukas/Ballard* technology from CSP HOLDINGS INC. to DATATREASURY CORP.

429.    That DATATREASURY CORP. is the assignee of the *Doukas/Ballard* technology and therefore owes to DOUKAS the same rights, obligations, duties and monies BALLARD owed to DOUKAS under the auspices of the *Doukas/Ballard joint venture* and the fiduciary duty BALLARD owed to DOUKAS.

430.    That by virtue of the foregoing, Plaintiff demands declaratory judgment against DTC declaring DTC the assignee and constructive trustee of DOUKAS' interest in the *Doukas/Ballard joint venture* technology.

### As and For a Thirty-eighth Cause of Action
(Declaratory Judgment: As Establishing the Named Banking
Institutions as Constructive Trustees of DOUKAS.)

431.    Plaintiffs restate, re-allege and show paragraphs "1" through "430" as is fully set forth herein.

432.    That as set forth herein, DOUKAS is entitled to the profits and/or proceeds of the *Doukas/Ballard joint venture* technology.

80

433. That as a result of the foregoing, the Court should impose a constructive trust naming the Defendant banking institutions herein as constructive trustees over any payments made pursuant to any settlement agreements with DTC regarding the *Doukas/Ballard joint venture* technology and maintaining said payments for the benefit of Plaintiffs.

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. On their First Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

B. On their Second Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

C. On their Third Cause of Action, Plaintiffs demand judgment against Defendants imposing a constructive trust over the *Doukas/Ballard joint venture* technology and all past and future proceeds generated by its existence.

D. On their Fourth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00).

E. On their Fifth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount

81

to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

    F.    On their Sixth Cause of Action, Plaintiffs demand judgment ordering Defendants to account to DOUKAS for all profits, proceeds, monies and things of value, whether tangible or intangible, flowing from ownership, use and enjoyment of the *Doukas/Ballard* technology as reflected in the patent filed by BALLARD under his own name.

    G.    On their Seventh Cause of Action, Plaintiffs demand judgment ordering dissolution of the *Doukas/Ballard joint venture* partnership, unwinding the partnership, appointing a receiver to oversee said dissolution and an accounting of the assets of the partnership along with distribution of the partnership assets in an amount to be determined by this Court, but in no event less than FIVE BILLION DOLLARS ($5,000,000,000.00).

    H.    On their Eighth Cause of Action, Plaintiffs Demand judgment imposing a constructive trust on 50% of DTC's shares along with 100% of all profits and/or proceeds to DTC, BALLARD, LANE, DELUCIA and JOHN AND JANE DOES "1" through "750" from the *Doukas/Ballard joint venture technology* for the benefit of DOUKAS.

    I.    On their Ninth Cause of Action, Plaintiffs Demand judgment ordering dissolution of DTC and ordering the sale of the *Doukas/Ballard joint venture technology* and ordering DTC to account to DOUKAS for 50% of all profits and remaining assets in DTC.

    J.    On their Tenth Cause of Action, Plaintiffs Demand judgment ordering dissolution of DTC and ordering the sale of the *Doukas/Ballard joint venture technology* and ordering DTC to account to DOUKAS for 50% of all profits and remaining assets in DTC.

K.     On their Eleventh Cause of Action, Plaintiffs Demand judgment ordering Defendant BALLARD and his assigns and/or co-conspirators to return the *Doukas/Ballard joint venture technology* to Plaintiffs.

L.     On their Twelfth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

M.    On their Thirteenth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

N.     On their Fourteenth Cause of Action, Plaintiffs Demand judgment appointing a receiver to oversee the *Doukas/Ballard joint venture technology* and any profits or proceeds made as a result thereof.

O.     On their Fifteenth Cause of Action, Plaintiffs Demand judgment against Defendants ordering an attachment of DTC's property within the State, namely: any and all proceeds created by any licensing agreements for use of the *Doukas/Ballard joint venture* technology any and all payouts, proceeds, profits and/or other monies paid pursuant to any settlement agreements between any Defendant corporate entities located within the State and any and all other property interests or proceeds passed through or located within the State, including any and all bank accounts maintained by any financial institutions located within the State of New York and any payments made by the Defendant banks located within the State of New York.

P.     On their Sixteenth Cause of Action, Plaintiffs Demand a preliminary injunction enjoining the Defendants from dissipating the proceeds and/or profits obtained through enforcement of the patent and the Plaintiffs' interest in the *Doukas/Ballard joint venture* technology.

Q.     On their Seventeenth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

R.     On their Eighteenth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

S.     On their Nineteenth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

T.     On their Twentieth Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

U.     On their Twenty-first Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS

84

($5,000,000,000.00), together with punitive, treble, exemplary and consequential damages in an amount to be determined by the Court, but in no event less than TEN BILLION DOLLARS ($10,000,000,000.00).

V.    On their Twenty-second Cause of Action, Plaintiffs demand judgment against Defendants in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00).

W. .   On their Twenty-third Cause of Action, Plaintiffs demand judgment rescinding the agreement dated February 9, 2010 and otherwise declaring it a nullity and void *ab nitio* with Plaintiffs being restored to the *status quo ante* position.

X.    On their Twenty-fourth Cause of Action, Plaintiffs demand judgment against Defendants rescinding the February 9, 2010 agreement for failure and/or lack of consideration.

Y.    On their Twenty-fifth Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon the fraud perpetrated upon Plaintiff by Defendants in arriving at the terms of the agreement and in the execution of same.

Z.    On their Twenty-sixth Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon Defendants' repudiation of same.

AA.    On their Twenty-seventh Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon Defendants' material breach of same.

BB.    On their Twenty-eighth Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon Defendants' overreaching.

85

CC.     On their Twenty-ninth Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon Defendants' based on unjust enrichment along with judgment in the amount of FIVE BILLION DOLLARS ($5,000,000,000.00).

DD.     On their Thirtieth Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon abandonment of said agreement.

EE.     On their Thirty-first Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon Defendants' misrepresentations.

FF.     On their Thirty-second Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement because said agreement is unconscionable.

GG.     On their Thirty-third Cause of Action, Plaintiffs Demand judgment against Defendants rescinding the February 9, 2010 agreement based upon Defendants' fraudulent inducement.

HH.     On their Thirty-fourth Cause of Action, Plaintiffs Demand declaratory judgment against Defendants finding in that no contractual relationship exists from the February 9, 2010 agreement due to lack of mutual assent.

II.     On their Thirty-sixth Cause of Action, Plaintiffs Demand declaratory judgment against Defendant, BALLARD declaring BALLARD a fiduciary of DOUKAS.

JJ.     On their Thirty-seventh Cause of Action, Plaintiffs Demand declaratory judgment against Defendant, DTC declaring DTC the assignee and

constructive trustee of DOUKAS' interest in the *Doukas/Ballard joint venture* technology.

KK.    On their Thirty-eighth Cause of Action, Plaintiffs Demand declaratory judgment against the Defendant banks declaring the Defendant banks constructive trustees over any payments made pursuant to any settlement agreements with DTC regarding the *Doukas/Ballard joint* venture technology along with judgment imposing a constructive trust over same for the benefit of Plaintiffs.

Dated:        April 6, 2011                        Yours, etc.

                                                                Robert J. Del Col
                                                                Attorney for Plaintiffs
                                                                1038 West Jericho Turnpike,
                                                                Smithtown, New York 11787
                                                                631-271-4684

87

VERIFICATION

STATE OF NEW YORK        }
                         }
COUNTY OF SUFFOLK        }

  **TED DOUKAS,** individually and on behalf of the Plaintiff corporate entities,

being duly sworn, deposes and says:

  I am the Plaintiff in this action.  I have read the foregoing Complaint and

know the material allegations and contents thereof; the same is true to my own

knowledge, except as to the matters therein stated to be alleged on information and

belief, and as to those matters I believe them to be true.

_____

TED DOUKAS

Sworn to before me this
6th Day of April 2011

_____

**Bryan R. Johnson**
**Attorney and Counselor at Law**
**Notary Public No. 01JO6116301**
**Qualified in Suffolk County**
**My Commission Expires September 27, 2012**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK
------------------------------------------------------------------------X
TED DOUKAS, SYNGEN DATA SERVICES
CORPORATION, TED DOUKAS as a shareholder of
SYNGEN DATA SERVICES, TED DOUKAS, as a joint
venture partner with CLAUDIO BALLARD, TED
DOUKAS as an equitable owner of all patents and
technology owned by CLAUDIO BALLARD or his
purported assignees, TED DOUKAS as an equitable owner
of all patents and technology owned by DataTreasury
Corp., TED DOUKAS as owner of certain technology and
Assets produced by a joint venture with CLAUDIO
BALLARD, TED DOUKAS as a 50% equitable owner of
DataTreasury Corp., an assignee of CLAUDIO BALLARD's
ownership of certain technology developed by the joint
venture and unknown Defendants named John and Jane Does
"1" through "750", TED DOUKAS as the constructive and
beneficial owner of all settlements and licensing agreements
relating to certain technology created by virtue of a joint
TED DOUKAS as a joint venture owner of the
assets of a joint venture partnership commonly referred to
"the *Doukas/Ballard joint venture*",

                              Plaintiffs,

                         -against-

CLAUDIO BALLARD, KEITH DELUCIA a/k/a
"KEITH WICKEY", a/k/a "KEITH DOYLE", SHEPHARD
LANE, UNIDENTIFIED DEFENDANTS
JOHN AND JANE DOES "1" THROUGH "750",
UNIDENTIFIED CORPORATE ENTITIES "1" THROUGH
 "75", UNKNOWN LICENSES AND BANKING
INSTITUTIONS "1" THROUGH "75", DATATREASURY
CORP., KEITH DELUCIA a/k/a "KEITH WICKEY", a/k/a
"KEITH DOYLE" as an owner of shares in DataTreasury
Corporation, SHEPHARD LANE, as an owner of shares in
DataTreasury Corporation, CLAUDIO BALLARD, as an
owner of shares in DataTreasury Corporation, SYNGEN
CORPORATION, CLAUDIO BALLARD as an owner of
shares in SYNGEN CORPORATION, CLAUDIO
BALLARD as the fiduciary to TED DOUKAS and SYNGEN
DATA SERVICES CORPORATION, CLAUDIO
BALLARD as the Constructive trustee of TED DOUKAS'
interest in the technology created by a joint venture, PETER
LUPOLI, VIRGINIA LUPOLI, CSP HOLDINGS INC.,

Index No.: 2011/09267
Dated: 4/15/11
*Plaintiff designates*
Suffolk County
*as the place of trial*


**SUMMONS**


The basis of venue is:
*Defendant's residence*

Defendant
Claudio Ballard resides at:
11 West Neck Court
Lloyd Harbor, NY 11743;
Joint Venture  venture,
Partnership's principal
place of business was as
Suffolk County.

HAROLD NIX (individually), NIX, PATTERSON AND
ROACH, LLP, BANK OF AMERICA, WELLS FARGO,
CITIBANK, BANK HAPOALIM, BANCORPSOUTH, INC.,
INTUIT, INC., KEYCORP and KEYBANK NATIONAL
ASSOC., JP MORGAN CHASE & CO., INGENICO, JP
MORGAN CHASE BANK, M&T BANK CORP., MERRILL
LYNCH, UNION BANK OF CALIFORNIA, PNC FINANCIAL
SERVICES GROUP, CHARLES SCHWAB & CO., INC and
CHARLES SCHWAB BANK, MERRILL LYNCH, PIERCE,
FENNER & SMITH, INC., PNC FINANCIAL SERVICES
GROUP, THE ROYAL BANK OF SCOTLAND GROUP,
SUNTRUST BANK, INC., WELLS FARGO & COMPANY,
BANK OF TOKYO-MITSUBISHI UFJ, LTD., THE BANK
OF NEW YORK MELLON CORPORATION, THE BANK
OF NEW YORK MELLON, CITIGROUP, INC., CITIBANK,
N.A., CITY NATIONAL BANK, COMMUNITY BANKING
SYSTEMS, BRANCH BANKING AND TRUST
CORPORATION, COMERICA BANK, COMERICA
INCORPORATED, COMPASS BANCSHARES, INC.,
COMPASS BANK, DEUSTSCHE BANK, EDWARD D.
JONES & CO., L.P., HSBC NORTH AMERICA HOLDINGS
INC., HSBC BANK USA, N.A., FIRST TENNESSEE BANK
NATIONAL ASSOCIATION, CULLEN/FROST BANKERS,
INC., and THE FROST NATIONAL BANK,

Defendants.

-------------------------------------------------------------------X

To The Above Named Defendants:

     **YOU ARE HEREBY SUMMONED** and required to serve upon plaintiff's attorneys
a verified answer to the verified complaint in this action within twenty (20) days after the
service of this summons, exclusive of the day of service, or within thirty (30) days after the
service is complete if this summons is not personally delivered to you within the State of New
York. In case of your failure to answer, judgment will be taken against you by default for the
relief demanded in the complaint.

Dated: April 12, 2011  
        Smithtown, New York

Yours etc.,  
Law Offices of  
**ROBERT J. DEL COL**

By: _____  
Robert J. Del Col  
*Attorneys for Plaintiff*  
Office & P.O. Address  
1038 West Jericho Turnpike  
Smithtown, New York 11787  
Ph: (631) 271-4684